BARNETT, AUDITOR, *et al. v.* UNITED STATES CASUALTY CO.

(In Banc. Feb. 26, 1945.)

[21 So. (2d) 5. No. 35787.]

**Greek L. Rice,** Attorney General, by **C. E. Hill,** Assistant Attorney General, and **W. D. Conn, Jr.,** of Jackson, for appellants.

Watkins & Eager, of Jackson, for appellee.

Argued orally by **W. D. Conn, Jr.**, for appellants, and by **W. H. Watkins**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

By Section 9537, Code 1942, which section is a part of the Privilege Tax Code, a gross premium receipts tax is laid upon insurance companies of the various classes, but coupled with this requirement, and as a part of it, there is the provision that from such gross premium receipts certain deductions may be made among which are "premiums returned to policyholders." By the fourth paragraph of the section the premium tax on liability insurance premiums is three per cent. The sixth paragraph of the section reads as follows: "Every insurance company shall, within the months of February and August of each year, make to the commissioner of insurance a full and correct statement under oath . . . of the gross amount of premium receipts and of the above described deductions during the six months ending with the pre-

ceding December 31st and June 30th, respectively, and shall, at the time of filing such report, pay to the commissioner of insurance the tax upon the premium collections for said six months' period computed as hereinabove provided."

It is thus seen that the Legislature took notice of the fact that, under several kinds of insurance, and particularly as to liability insurance, the premium to which the insurance company will be entitled is not definitely fixed as an ascertained amount at the time the policy is issued, but that the true amount remains to be determined by subsequent events. Usually, however, an advance premium is paid to the company at the time the policy is issued sufficient in amount to cover the maximum premium under any event, or a partial advance premium will be paid, with further advances to be made at stated periods during the life of the policy, with a stipulation that at the end of the year or at some other specified time, the calculations will be made on the basis of the controlling facts which have transpired, and the difference between what the company has actually earned as a premium and what has been advanced will be returned by the company to the policyholder. It was a situation such as that to which the statute addressed itself in providing as a reduction from gross premium receipts "premiums returned to policyholders," which, in turn, produces the result that the ultimate amount of a premium upon which the tax is to be paid is the earned premium and not the advanced premium.

Nevertheless, by the quoted sixth paragraph of the statutory section the legislature provided a simple and practicable plan by which the state should, with desirable promptitude, receive its tax money, and that it would not be delayed therein by waiting on premium receipts until the subsequent events should transpire by which the difference between the advance premium and the earned premium would or could be worked out. The requirement, then, was established that the gross premium

receipts, for each six months, must be reported, less the premiums returned to the policyholders during the same six months' period, and the tax paid on that basis at the close of the six months, although in the gross premium receipts of that period there would be due to be later credited to the policyholder a part of the premium receipts so reported.

This convenient plan was adopted as a normal device, on the assumption that the company reporting would always have during any six months' period a sufficient amount in gross receipts to meet any deductions to be made for that six months, regardless of the fact that the deductions arose out of receipts for some previous six months' period; and the legislature made no provision by the cited section or elsewhere in the Privilege Tax Code to meet a situation when the deductions for a six months' period would exceed the receipts of the same period.

In the case now in hand the appellee company had collected on two of its policies of liability insurance and reported gross premium receipts during two successive periods of six months in the sum of $245,317.85, on which it paid to the insurance commissioner the taxes calculated at the rate of three per cent thereon. After the expiration of the two six months' periods it was found that upon taking all the controlling facts as they had transpired during the life of its two liability policies mentioned, the company was due to return, and did return, to the policyholder the sum of $99,605.23 as unearned premium. It transpired also that for the six months' period during which the said repayment was made to the policyholder the company had received only $5,307.50 as premiums, which lacked, as may be readily seen, $94,-297.73 in being enough to meet the deduction.

The amount of the overpayment, that is to say, on the amount above earned premiums, is $2,828.93, when all the calculations have been reconciled; and there being no

means by which the taxpayer could have relief through the insurance department, the company availed of the provisions of chapter 127, Laws 1944.

The Attorney General disallowed the claim and appellee took it to the chancery court for review, and there obtained a decree for its payment.

The position of the Attorney General for the state is, in brief, that Section 9537, Code 1942, contains the sole and exclusive formula by which credit may be obtained on premiums returned to the policyholder; that these credits or deductions are usable only against receipts within the six months' period covered by the report of that period, and that to the extent that receipts within a six months' period are insufficient, there are no allowable deductions for that period. In other words, that the Legislature has allowed reductions only as stated, the argument being that since it was not obliged to allow any reductions at all, the deductions which it did allow go no further than as literally permitted by the cited section.

It is our duty, however, to look through forms to the dominant purpose of the legislature, and there it is seen, as already stated, that the purpose was to tax, as an ultimate liability, only earned premiums; that by the same process whereby in cases such as this the gross premium receipts are of advances on premiums, so the tax payments on such gross receipts are advances on taxes; from which it follows that any payment made above earned premiums would be, in its final aspect, an overpayment.

And it was to give relief to taxpayers from such overpayments, and the like, that the legislature at its last session, by chapter 127, Laws 1944, established a broad and comprehensive agency by which cases such as this, and others within the terms of the Act, could be met, and that what is right could and should be done for the taxpayer. It was in recognition of the fact that true results according to the real purposes of the law cannot always be worked out in the various departments and offices serv-

ing as taxgatherers, and this new Act was designed to furnish the machinery wherever without it there would be no adequate means of relief.

Save as to the particular taxes specially excepted, a taxpayer may now pay to a tax collector, state or county, any tax demanded, thereby not delaying its payment, and when, upon subsequent development or ascertainment, it is found that as a matter of ultimate liability the tax, or the full amount, so collected is not rightfully retained, and he is unable to obtain relief through the ordinary administrative channels, he may resort to the positive provisions of the modern enactment last cited. If this was not the purpose of the enactment, it had as well not been passed at all.

Affirmed.