BIRCH & SONS CONST. CO., Respondent, v. PORTER, STATE TREASURER, Appellant

No. 8547

Submitted March 20, 1945. Decided April 7, 1945.

157 Pac. (2d) 777

Mr. R. V. Bottomly, Attorney General, and Mr. I. W. Choate, all of Helena, for appellant.

Messrs. Jardine, Chase & Stephenson, all of Great Falls, for respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by defendant from a judgment in favor of

plaintiff in the sum of $29,033.70 for corporation license taxes paid under protest.

To the complaint defendant interposed a general demurrer. Before the hearing on the demurrer plaintiff asked and, without objection, was granted leave to file a supplemental pleading. By agreement the demurrer was regarded as applying to the supplemental pleading. The demurrer was overruled. Defendant declined to plead further and judgment was accordingly entered for plaintiff.

The question before us is whether the complaint and supplemental pleading state facts sufficient to constitute a cause of action. The essential allegations are these: Plaintiff is a domestic corporation engaged in a general contracting business. In 1943 it filed its license tax return for the calendar year 1942. The return disclosed income of $232,688.26 subject to tax, on which it paid $6,980.65. The State Board of Equalization demanded $46,856.26 additional tax which was paid under protest. The demand was based upon the following facts: That plaintiff during the year 1942 was a member of a joint firm designated as S. Birch & Sons Construction Co.—J. L. McLaughlin, and that the firm filed a partnership return showing that it received an income of $3,123,750.47 from war contracts with the United States and in which there was deducted the sum of $1,697,884.34 as a provision for renegotiation of the war contracts, leaving a balance of $1,425,866.36. This balance was shown by the return as having been distributed to plaintiff and to J. L. McLaughlin in equal shares of $712,933.18 each; that plaintiff's return showed the item of $712,933.18 as a part of its gross income but in turn it deducted the whole amount as a provision for renegotiation for war contracts; that from the returns it showed that the joint venture received a total gross income of $3,123,750.74, and that plaintiff's share was one-half thereof or a total of $1,561,875.37, which the board used as the basis upon which it arrived at the figure of $46,-856.26 as the amount due from the plaintiff, but the plaintiff,

on the other hand, in these returns claimed the total amount as a provision for the renegotiation of the war contracts.

The complaint alleges that plaintiff deducted the $1,561,-875.37 in computing its net income because at the time its books were closed it recognized it would be liable to make refund under the laws relating to renegotiation, "that while liability therefor was certain, it was then impossible to know the exact amount thereof," and the Montana law provided for no refund to a corporation of any amount of license tax overpaid, and that the deduction "represented the best estimate that plaintiff then could make of the amount it would be called upon to pay in discharge of its liability to make refund under the terms of the laws relating to renegotiation of such war contracts." The Board of Equalization, it is alleged, treats the entire amount as income and refuses to permit all or any part of it as a deduction. It is alleged that the entire proceeds with respect to which the additional tax was demanded, are proceeds received by plaintiff under war contracts, which were subject to the laws relating to renegotiation; that no part of the proceeds from war contracts constitutes income until the renegotiation is had and the amount of profit which plaintiff will be permitted to keep and retain is determined; that at the time of the demand for the additional tax and at the time of the commencement of this action renegotiation proceedings were pending but uncompleted; that plaintiff has at all times kept its books and accounts pursuant to a regular method approved by good accounting practice and that its federal income tax returns and the Montana Corporation License Tax returns for many years have been prepared, filed and approved upon this basis of accounting; and that by such method of accounting the deduction claimed as a provision for renegotiation of the war contracts was proper. The complaint alleges that the State Board of Equalization has proceeded erroneously in arriving at the conclusion that the deduction claimed by plaintiff is not a proper deduction.

The supplemental pleading alleges in substance that after

completing the renegotiations with the United States on the war contracts referred to in the complaint, of the sum of $1,561,875.37 received by plaintiff as alleged in the complaint it was required to refund to the United States government $960,000, leaving plaintiff a net of $601,875.37, and no more; that plaintiff thereupon prepared an amended return for the year 1942, both for the partnership and for itself showing these facts. It alleged that if the corporation license tax were computed on the sum of $601,875.37 its total tax would be $18,056.26 instead of $46,856.26 as demanded by the board; that plaintiff should therefore be entitled to the difference or $28,800; it further set forth an overpayment of $233.70 on its regular income aside from war contracts, which it demanded.

Defendant contends that the entire receipts of plaintiff for the year 1942 represented taxable net. income and that the amount set up as a reserve to cover liabilities upon renegotiation of the war contracts was and is not an allowable deduction; that plaintiff's recourse is to pay the tax on the entire receipts for that year and then apply to the legislature for a refund of overpayment resulting from the renegotiation of the contracts. In effect their contention, if sustained, would accomplish the same result now attained but would do so by a different method. In other words, defendants' contention, if upheld, would add nothing to the revenues of the state in the way of additional taxes. By Chapter 209, Laws of 1945, refund of excessive taxes is now authorized to be made by the board but that Act does not affect this case.

The question before us, reduced to its last analysis. is one of procedure, and may be stated as follows: When plaintiff, as is alleged here, would be liable to make refund under the laws relating to renegotiation and "that though liability therefor was certain" the exact amount was unknown during the taxable year, may it make an estimate of the amount it would be called upon to pay in discharge of such liability and deduct it as a liability and make adjustment after the amount is fixed and ascertained. or must it pay on the entire receipts and then

go to the trouble of presenting to the legislature a claim for refund?

Section 2296, Revised Codes, as amended, requires corporations to pay a license tax for carrying on business in Montana upon "the total net income received by such corporation in the preceding fiscal year." Under section 2299 the tax is computed upon the total net income. There is of course a difference between receipts and either gross or net income. The question is, May a liability such as the liability to refund to the government on renegotiation of war contracts be deducted from the gross receipts as a contingent liability in determining net income? The statute does not enumerate this as a proper deduction from gross income to determine the net income. (Sec. 2297, Revised Codes.) But, as before stated, total receipts do not always represent gross income. It is conceded that plaintiff has for many years filed its corporation license tax returns upon an accrual rather than a cash basis and that this practice is permissible and allowed by the State Board of Equalization.

Renegotiation of all war contracts so as to control the profits was a matter of certainty and was so alleged in the complaint. The terms of the statute, as amended, are found in Title 50 U. S. C. A. Appendix sec. 1191. The exact amount of the refund could not be determined with any degree of accuracy until the amount was actually determined by the United States government. But all factors that had to be considered in making the computation existed at the close of the year 1942, and nothing further remained to be done but to make the computation. Under such circumstances the question is: "Did the liability to refund accrue within the taxable year of 1942 so that a reserve could be set up by the taxpayer reporting on an accrual basis to provide for the liability?" In Brown v. Helvering, 291 U. S. 193, 54 S. Ct. 356, 359, 78 L. Ed. 725, the United States Supreme Court stated the rule applicable to this question as follows: "It is true that, where a liability has 'accrued during the taxable year,' it may be treated as an

expense incurred; and hence as the basis for a deduction, although payment is not presently due, United States v. Anderson, 269 U. S. 422, 440, 441, 46 S. Ct. 131, 70 L. Ed. 347 [350, 351]; American Nat. Co. v. United States, 274 U. S. 99, 47 S. Ct. 520, 71 L. Ed. 946; Aluminum Castings Co. v. Routzahn, 282 U. S. 92, 51 S. Ct. 11, 75 L. Ed. 234, and although the amount of the liability has not been definitely ascertained. United States v. Anderson, supra. Compare Continental Tie & Lumber Co. v. United States, 286 U. S. 290, 296, 52 S. Ct. 529, 76 L. Ed. 1111 [1113].''

The court continued in the opinion by saying, ''But no liability accrues during the taxable year on account of cancellations which it is expected may occur in future years, since the events necessary to create the liability do not occur during the taxable year. Except as otherwise specifically provided by statute, a liability does not accrue as long as it remains contingent. Weiss v. Wiener, 279 U. S. 333, 335, 49 S. Ct. 337, 73 L. Ed. 720 [721]; Lucas v. American Code Co., 280 U. S. 445, 450, 452, 50 S. Ct. 202, 74 L. Ed. 538 [540, 67 A. L. R. 1010].''

The liability here was alleged to be certain and not contingent. It was only the amount that was alleged to be uncertain. The fact that subsequent events disclosed that $960,000 was required to be refunded shows that the allegation of certainty was fully justified so far as this case is concerned. A number of cases are cited in the note following the opinion in Brown v. Helvering, supra, in 78 L. Ed., and particularly commencing on page 751 which stress the point that if the liability is certain and there remains merely the matter of computing the amount based upon factors or elements that transpired or were known during the taxable year, the liability is a proper deduction when the books have been kept on an accrual basis.

In United States v. Anderson, 1926, 269 U. S. 422, 46 S. Ct. 131, 134, 70 L. Ed. 347, it was held that under the provisions of the Internal Revenue Act of 1916, if a corporation adopted as its method of bookkeeping the setting aside of a reserve for expenses or obligations incurred during the year, whether

they were paid during the year or not, it had to take the war munitions tax accruing during the year into account in fixing its profits for income tax purposes, and could not defer the adjustment on account of such tax until the following year, although the munitions tax did not become due and payable until the later year. The court said: "Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued."

In Eakins v. United States, D. C., 36 F. (2d) 961, 962, the plaintiff was a stockholder of a corporation and reported as income for income tax purposes salary which she had received from the corporation for certain years. She and other stockholders similarly situated had made a written contract with the corporation that should additional taxes be levied against the corporation for those years she and the other stockholders receiving such salary would refund such additional payments to the corporation, each in the ratio of his stock holdings. Plaintiff received money which she thought was income, but which because of her written contract she was compelled to return to the corporation. The court held that she was entitled to recover the income tax which she had paid based upon this alleged salary. The court in so holding said: "In the hands of the petitioner, as received from the corporation, it had the guise of income, but, when stripped of that guise, it appears

that all the petitioner received was a loan or advance of the use of the money.''

Much in the same category was the money received by plain- ██ tiff from the government on the war contracts until re- negotiation determined how much of it belonged to plaintiff and how much of it had to be returned to the government. See, also, Uniform Printing & Supply Co. v. Commissioner of Internal Revenue, 7 Cir., 88 F. (2d) 75, 109 A. L. R. 966, and Helvering v. Russian Finance & Const. Co., 2 Cir., 77 Fed. (2d) 324. As was said in Spring City Foundry Co. v. Commissioner, 292 U. S. 182, 54 S. Ct. 644, 645, 78 L. Ed. 1200: ''Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income.''

Our investigation has not revealed a case where the facts are exactly the same as those here, but by analogy the above cases support the conclusion that the trial court was right in overruling the demurrer to the complaint and in entering judgment for plaintiff.

The judgment· is affirmed.

Mr. Chief Justice Johnson and Associate Justices Morris, Adair and Cheadle concur.