STATE *ex rel.* RICE, ATTY. GEN., *v.* MISSISSIPPI INSTITUTE OF AERONAUTICS.

(In Banc. May 28, 1945.)

[22 So. (2d) 372. No. 35865.]

Greek L. Rice, Attorney General, by C. E. Hill, Assistant Attorney General, and W. D. Conn, Jr., of Jackson, for appellant.

Flowers, Brown & Hester, of Jackson, for appellee.

**McGehee, J.,** delivered the opinion of the court.

This suit is brought by the appellee, Mississippi Institute of Aeronautics, for the recovery of the sum of $6,580 as a refund of a portion of the income taxes paid to the State Tax Commission on March 12, 1943, for the calendar year of 1942. The claim for such refund was duly audited and allowed by the State Tax Commission on June 10, 1944, and a certificate as to the overpayment of the said amount of income taxes was issued to the appellee taxpayer by the said Commission, when the claim was referred to the State Auditor of Public Accounts for an investigation and audit of the same by him. Upon a finding by the Auditor that the income taxes covered by the claim had been erroneously paid into the Treasury of the state he thereupon submitted the same to the Attorney General for his approval. Sometime thereafter the Attorney General disapproved the allowance of such refund on the ground that, in his opinion, "the State is not liable," and returned the same to the Auditor of Public Accounts, whereupon the Auditor notified the claimant of such disapproval.

Chapter 127, Laws 1944, provides that "a claimant taxpayer being aggrieved at such disapproval may within six months from the date thereof, file in the chancery court his petition for appeal and review." This was done, and at the hearing the Attorney General appeared and defended the suit in chancery on behalf of the state, but filed no answer thereto, and upon the trial the court allowed the refund sued for and entered its decree requiring the payment of the claim in like manner as if it had been

duly approved by the Attorney General, and the said official prosecutes this appeal on behalf of the state.

The appellee was, during the year 1942, engaged solely in the business of training pilots for the air force of the United States under a contract with the Federal Government. Its training field is located near Madison, Mississippi, and during the year 1942 the said contractor received from the Government as compensation for its services the sum of $213,054.96, and on March 12, 1943, it filed its state income tax return with the State Tax Commission disclosing this amount of income received, and paid to the said Commission the sum of $14,408.85 in income taxes thereon. Thereafter, and subsequent to July 1, 1943, the Federal Government exercised the right which it had originally reserved in its contract with the appellee to require a renegotiation of the contract as to price and with the result that the appellee was required to refund to the Government the sum of $94,000 as excess profits received during the year 1942 under the contract, leaving the sum of $119,054.96 retained by the contractor as its total income for said year. The portion of the said $14,408.85 paid to the state in income taxes which is allocable to the $94,000 refunded to the Government, amounts to the said sum of $6,580 herein sued for.

On March 14, 1944, the state legislature by Chapter 11 of the Laws of that year appropriated the sum of $50,000 with which to take care of the refund of income and other taxes erroneously paid to the State Tax Commission, for the fiscal years of 1942 and 1943, beginning July 1, 1942 and ending June 30, 1944. It had previously appropriated the like amount at former sessions of the legislature but provided for the first time in said Chapter 11, Laws of 1944, that the refunds to be paid from such appropriation should include claims "based on the renegotiation of war contracts." On that same day the legislature likewise appropriated by Chapter 10, Laws 1944, the sum of $450,-000 with which to take care of the refund of income and other taxes erroneously paid to the State Tax Commis-

sion, for the fiscal years 1944 and 1945, beginning July 1, 1944 and ending June 30, 1946, wherein it was likewise provided that the claims for refunds to be paid from the said appropriation should include those based on the renegotiation of war contracts.

Thus it will be seen that the action of the State Tax Commission in auditing and allowing the refund here involved was in pursuance of the expressly declared purpose and intention of the legislature that such refund should be made in proper cases. The legislature is presumed to have known that the holders of war contracts were required when filing their state income tax returns to report as income all compensation received from the Federal Government, subject to the right of the Government to subsequently require the renegotiation of the contract as to price and to demand a refund of such portion of the profits reported as income which was found to be excessive. Therefore, in making these appropriations out of which refunds of taxes were to be made by the State Tax Commission, including claims "based on the renegotiation of war contracts," the state Legislature evidently had in mind that there would be just claims, and enormous in amount, based upon returns which were correct when filed with the State Tax Commission, but which might arise from the subsequent renegotiation of the contracts. Claims based upon mere errors of the taxpayer in reporting more income than he had actually received, or in paying a tax on the amount actually received in excess of the sum properly due thereon would not be a claim based upon the subsequent renegotiation of the contract within the meaning of these appropriation statutes, but rather claims based upon errors in calculation or in judgment as to the amount of income actually received during the year covered by the tax and as to the amount of tax due thereon.

But it is contended by the appellant that Chapter 127, Laws 1944, granting the taxpayer the right to bring such a suit does not cover this particular character of claim,

since it only provides that "if any person, firm or corpo-.ration has paid, or shall hereafter pay to the . . . state tax commission . . . through error or otherwise, whether paid under protest or not, any . . . excise tax for which such person, firm or corporation was not liable, or if any such taxpayer has paid any tax in excess of the sum properly due and such erroneous payment or over-payment has been paid into the proper treasury, the taxpayer shall be entitled to a refund of the taxes so erroneously paid." The precise contention of the appellant is that the facts rendering the payment of the taxes an overpayment or an erroneous payment must have existed at the time the income tax return was made on March 12, 1943. But we are unable to agree with this contention. We think that the subsequent renegotiation of the contract as to price relates back so as to render the income tax on the $94,000 an overpayment, since the State Tax Commission received the tax subject to the right of the Federal Government to require the refund by the taxpayer of such portion of the total compensation paid under the contract, thereby rendering it non-taxable income of the taxpayer.

A further answer to the contention of the appellant to the effect that since the appellee had actually received the full amount of the gross income reported by it for the year 1942, and had computed its taxes on its net income after subtracting the authorized deductions therefrom to which it was then entitled, there was no overpayment or erroneous payment of taxes under its return, we call attention to the recent case of Barnett, Auditor, et al. v. United States Casualty Co., 197 Miss. 873, 21 So. (2d) 5, 7, wherein it was held that the insurance company was entitled to recover an overpayment of taxes paid on the portion of its premiums which it had to subsequently refund to its policy holders. The relief was there sought and obtained under the provisions of the said Chapter 127, Laws 1944, and the Court in its opinion stated, among other things, that: "Save as to

the particular taxes specially excepted, a taxpayer may now pay to a tax collector, state or county, any tax demanded, thereby not delaying its payment, and when, upon subsequent development or ascertainment, it is found that as a matter of ultimate liability the tax, or the full amount, so collected is not rightfully retained, and he is unable to obtain relief through the ordinary administrative channels, he may resort to the positive provisions of the modern enactment last cited. If this was not the purpose of the enactment, it had as well not been passed at all.''

The taxpayer in the instant case had no other alternative than to truthfully report under oath in its income tax return of March 12, 1943, the amount of compensation which it had actually received from the Government under its contract since it had no way of determining what amount, if any, of such compensation it would be required to subsequently refund to the Government. Under the Act of Congress, 50 U. S. C. A. Appendix, Sec. 1191, the Government reserved the right to require such refund ''whenever, in the opinion of the Board, the amounts received or accrued under contract with the Departments . . . may reflect excessive profits.'' The Act in question created a War Contracts Price Adjustment Board composed of six members, one of which was to come from the War Department, one from the Navy Department, one from the Treasury Department, one from the Maritime Commission, one from the Reconstruction Finance Corporation, and one from the War Production Board, with large discretionary powers as to the extent of the refunds to be required in each particular case. In other words, the Act did not provide for the refund of excess profits under a contract in excess of any certain percent of profit whereby the taxpayer could anticipate what his taxable income might ultimately amount to.

In the case of S. Birch & Sons Construction Co. v. George P. Porter as Treasurer of the State of Montana, 157 P. (2d) 777, decided by the Supreme Court of that

state on April 7, 1945, and not yet reported [in State Reports], the state had collected from the Construction Company a corporation license in the sum of $46,856.26 based upon its 1942 return, which showed an income of $1,561,875.37. The Construction Company's contract was a war contract subject to be renegotiated in like manner as the contract involved in the case at bar, and as a result of the renegotiation required in that case there was refunded to the United States Government the sum of $960,000 as required, leaving the company only $601,-875.37. The Construction Company had been required to pay the state tax of $46,856.26 based upon the original amount reported, while on the final amount after renegotiation the tax was only $18,056.26, making a difference of $28,800. But during the year 1942 that state had no statute authorizing a refund of taxes, and did not enact such a statute until Chapter 209 of the Montana Acts of 1945 was passed. The Construction Company found it necessary to bring suit to recover the overpayment. The Supreme Court held that the liability on the part of the contractor to make the refund was certain at the time the income was reported and the tax paid, and that only the amount of such refund to be later required was uncertain. The Court held that the taxpayer was entitled to recover the tax which it had paid on the amount of income which was later refunded to the Government.

But it is next urged by the appellant that the appellee failed to meet the burden which rested upon it of proving by a stipulation in the agreed statement of facts upon which the case was tried, or otherwise, that in the renegotiation proceedings the Federal Government did not allow to the appellee a credit for the income tax of $6,580 paid on the $94,000 which was later refunded to the Government, when it determined the amount of the net profits which should be refunded. But we think that this contention overlooks the fact that the presumption is, in the absence of any proof to the contrary, that when the State Tax Commission audited and approved this refund

it had before it the necessary factors to determine whether or not the claim was just. Moreover, Chapter 127, Laws of 1944, provides that "the attorney general shall have plenary power to require the claimant . . . to furnish any such additional documents or information as may in his opinion be necessary or proper to enable him to determine the merits of the claim." The record fails to disclose that any additional information was required by the Attorney General's office in support of the prima facie presumption that the State Tax Commission was fully advised of the facts when it audited and approved the claim for the refund. And this statute further provides that "if the attorney general shall disapprove the claim, he shall return it to the auditor of public accounts accompanied by his opinion, whch shall show the reason for his disapproval . . ." The foregoing objection as to whether or not the taxpayer had received credit in the renegotiation proceedings for the income tax paid to the state on the amount of money refunded to the Government was not suggested as a reason for the dis-approval of the claim, nor was the taxpayer called upon to furnish this additional information to the Attorney General as contemplated by the statute if the same had been then deemed necessary or proper to enable him to determine the merits of the claim.

Furthermore the Act of April 28, 1942, Chapter 247, Title IV, Section 403, 56 Stat. 245, as amended by Act Oct. 21, 1942, 56 Stat. 983, 50 U. S. C. A. Appendix Sec. 1191, providing how excess profits on Government contracts should be determined and refunded to the Treasury contains a provision to the effect that "in determining the amount of any excess profits to be eliminated hereunder the Secretary shall allow the contractor or subcontractor credit for Federal income and excess profit taxes as provided in section 3806 of the Internal Revenue Code." This authority is evidently granted upon the theory that since the treasury has on hand the federal income and excess profit taxes paid on the income received by the

contractor under his performance of the contract, it should not retain such taxes collected on the amount of compensation to the contractor which he is required to refund, without giving him credit therefor. This statute is silent as to credit for state income taxes, and as to whether such a credit could be given in the renegotiation proceedings in the absence of federal statutory authority, is a question on which it is unnecessary that we express an opinion. But we find, however, that prior to the renegotiation of the contract here involved, Section 1191(a) (4) (B) U. S. C. A. Title 50, Appendix, War & Defense Contracts Acts, was enacted so as to provide, among other things, that "in determining the amount of excessive profits to be eliminated [from war contracts] proper adjustment shall be made on account of the taxes so excluded, other than Federal taxes, which are attributable to the portion of the profits which are not excessive." Under this provision of the statute, which was in force at the time the renegotiation proceedings were had in the case at bar, as aforesaid, the governmental agencies were without authority to give credit to the contractor for income taxes paid to the state except as to such taxes as were attributable to the portion of the profits which were not excessive.

We are, therefore, of the opinion that we are not warranted in assuming that the appellee may have received a credit in the renegotiation proceedings with the Federal Government for the state income tax herein sued for, contrary to the provision of the statute last above quoted, and especially so since it should be presumed that the State Tax Commission in auditing and approving the claim for refund was properly advised as to the facts and no additional information was requested of the taxpayer by the Attorney General so as to afford opportunity to the taxpayer to prove that the claim was not an attempt to collect this sum both from the Federal and State Governments. Furthermore, Chapter 127, Laws of 1944, provides that when the claim has been returned to the Auditor

of Public Accounts by the Attorney General "accompanied by his opinion which shall show the reason for his disapproval," and the taxpayer shall have perfected the appeal to the chancery court, the Auditor shall transmit to said court a certified copy of the entire record of the claim as shown by the files in his office, and that "the controversy shall be tried by the court on such record." We cannot, therefore, go beyond the record and assume that in the renegotiation proceedings the taxpayer may have perchance received credit for the sum now sued for.

The decree of the Court below in ordering that the claim for the refund should be allowed, and directing payment thereof, should, therefore, be affirmed.

Affirmed.