STATE *v.* CUMMINGS, et al.

In Banc. May 9, 1949.

(40 So. (2d) 587)

John **E. Stone**, Assistant Attorney General, **M. M. McGowan**, District Attorney, **Campbell & Campbell**, and **Green & Green**, for appellant.

Henry & Barbour, and Ray, Spivey & Cain, for ap-
pellees.

**Roberds, J.**

The primary question for decision herein is whether a royalty interest in land from which oil was actually being produced was legally assessable for ad valorem taxes in

the years 1941 to 1943. Secondary questions are involved and will be developed later in the opinion.

Appellee, Barbour, during said years, and appellee, Cummings, through the years 1942 and 1943, owned such an interest in separate tracts in the Tinsley oil field in Yazoo County, this State, which interests were assessed for ad valorem taxes for the respective years, and which taxes the parties paid without protest. Barbour was the owner of no other estate, or right, in the land, or the lease thereon, but Cummings also owned, and resided on, the surface of the land above his mineral interests, on which land he had theretofore executed the usual oil and gas lease, reserving his mineral rights.

All taxes, including that against the leasehold, the fee, the well operator, the surface owners, and other royalty owners, were all duly paid.

In 1947 Barbour and Cummings, by separate proceedings, petitioned the State Auditor of Public Accounts for a refund of the taxes so paid by them upon such royalties, contending that under the cases of Gulf Refining Co. v. Stone, State Tax Commissioner, 197 Miss. 713, 21 So. (2d) 19, decided February 26, 1945, and Smith County Oil Company v. Board of Sup'rs of Simpson County, 200 Miss. 18, 25 So. (2d) 457, 26 So. (2d) 685, handed down on March 25, 1946, suggestion of error overruled May 13, 1946, no authority existed to assess such royalty interests ad valorem; that, therefore, they did not owe the tax and had a legal right to recover the same from the State and its subdivisions. The Auditor referred the question to the Attorney General of the State, who gave it as his opinion the taxes had been legally assessed and the claims should be denied. Accordingly, the Auditor rejected the demands for refund. Petitioners then acting under authority of Chapter 127, Laws of Mississippi 1944, filed their claims in the Chancery Court of Yazoo County. The learned Chancellor awarded a decree for the petitioners, concluding that said two cases authorized recovery and that he was bound by them.

The two causes, by agreement, were heard and decided together by the Chancellor, and are being so decided by us on this appeal. It is disclosed also that these two cases are typical of some two hundred and eleven other claims, similar in all substantial facts, now pending in said County, awaiting the outcome of this appeal.

On October 27, 1948, after the appeal had reached this Court, the State filed a motion to abate it, together with all proceedings to recover said taxes, contending that this was the effect of Chapter 445, Laws of Mississippi 1948, purporting to bring about that result. That motion this Court passed for decision upon the hearing of the cause upon the merits.

Therefore, the questions confronting us are, first, whether Chapter 445, Laws of 1948, had the effect of divesting out of the judgment-creditors the right to recover the taxes, if such were illegally paid, and of abating the appeal; second, whether Chapter 127, Laws of 1944, conferring the right to sue the State for recovery of illegally paid taxes, was retroactive as to rights accruing prior to passage of the Act or was prospective only; third, whether the royalty interests, under the circumstances here, were, at the times mentioned, subject to assessment for ad valorem taxes, and, fourth, as to Cummings, whether his ownership of and payment of taxes on the surface of the land, under the conditions here, constituted a payment of the taxes on his mineral rights.

The first question was settled against the contention of the State by the decision on the Suggestion of Error in the case of Stone, State Tax Commissioner, v. McKay Plumbing Co., 200 Miss. 792, 813, 26 So. (2d) 349, 30 So. (2d) 91. We deem it unnecessary to weave that thread over again. It is enough to say that the vested rights recognized by that decision are too fundamental and the danger of their abolishment by legislative fiat too great to justify retraction of the principles of law therein announced.

On the second question, the right of a taxpayer to sue the State for taxes illegally paid, such right did not exist before March 31, 1944, the effective date of Chapter 127, Laws of 1944. Before that time, and beginning with Chapter 196, Laws of 1926, provision was made for presenting claims for such refunds, but there was no express authority to sue therefor in case the claims were denied. So that the right of appellees herein to sue rests upon said Chapter 127, Laws of 1944. But we think that Chapter conferred the right of suit even as to taxes paid prior to its passage, for these reasons:

The Act itself says "If any person, firm or corporation has paid, or shall hereafter pay . . ." taxes for which there was no liability, suit therefor could be brought to recover the same, if payment by the Auditor should be refused. The Act expressly applies to one who "has" paid such taxes.

The statute contains this provision:

"Provided further, that nothing in this section shall be construed as authorizing the refunding of state taxes paid into the state treasury through error, or otherwise, or satisfying a judgment or decree against the state except through an appropriation therefor by the legislature."

By Chapter 77, Miss. Laws 1938, page 67, the Legislature appropriated $50,000 to refund payment of erroneously paid ad valorem, and other specified, taxes, without, by its terms, limiting such payments to taxes erroneously paid after passage of the Act.

In State ex rel. Rice, Attorney General, v. Mississippi Institute of Aeronautics, 198 Miss. 288, 22 So. (2d) 372, an action brought under said Chapter 127, this Court affirmed a refund of income taxes paid on March 12, 1943, prior to the effective date of said Chapter 127.

Therefore, the statute applies to refund of taxes illegally paid before, as well as after, its passage.

Were the producing royalty interests assessable ad valorem? No point is here made as to the method of

assessment, the valuation or that it is a double assessment. Appellees plant themselves on the proposition that under Gulf Refining Co. and Smith County Oil Co. cases, supra, such an assessment cannot be legally made. The Smith County case did not involve a producing royalty. It dealt with the power to assess minerals in non-producing lands. It did hold that such under-surface interests were not assessable for the reason they could not be seen and valued by the appraiser. However, Hendrix v. Foote, Miss., 38 So. (2d) 111, impliedly, and Bailey v. Federal Land Bank, Miss. 40 So. (2d) 173 not yet reported in State reports, expressly overruled the Smith County Oil Company case. The Gulf Refining Company case involved the constitutionality of the severance, or, as the statute denominates it, privilege tax, law imposing a tax upon the privilege or activity of producing oil. As one ground for holding such tax constitutional the main opinion did say that under-ground oil and minerals were not assessable ad valorem. However, as pointed out in the Bailey case, supra, that pronouncement was not necessary to a decision of the questions involved in the Gulf case. In other words, this Court has not held that a producing royalty interest is not assessable ad valorem. As stated, the Gulf case was the only case involving such royalty interest. The other related cases—Smith County Oil Co., Hendrix v. Foote; Bailey, State Tax Collector, v. Federal Land Bank, all supra, and McNatt v. Hyman, Miss. 38 So. (2d) 107,—all dealt with assessments of minerals under lands non-producing when assessed. Besides, the taxes here involved were paid several years prior to the decisions in the Gulf and Smith County Oil cases. On the other hand, we expressly stated in the Bailey case, supra, that       "A separate mineral fee interest in oil and gas in place created by grant or exception, the interest created in the lessee by the ordinary oil and gas lease, the royalty interest reserved in the lessor in an oil and gas lease, a perpetual royalty interest in oil and gas created prior to lease for production, and

an overriding royalty interest created out of the interest of the oil and gas lessee are all property interests, real or personal, and subject to taxation—,'' and that ''assessments are made upon the value of that interest and not upon the entire mineral value of the land. Under the usual royalty clauses of oil and gas leases, one-eighth of the oil and gas, or the value thereof, is reserved to the lessor. This is a property interest and is therefore taxable. . . .''

We, therefore, hold that the royalty interests herein were taxable.

██ ██ Dealing now with the fourth question, Cummings owned and paid taxes upon the surface above his mineral rights. Did he thereby pay taxes on his minerals under the circumstances of this case? The answer to this question is not without doubt and has given us much concern. We have concluded that under the facts here the surface tax payment did not include Cummings' royalty interest in said land. Cummings relies upon Stern v. Parker, 200 Miss. 27, 25 So. 2d 787, 27 So. 2d 402. We note, in the first place, that case involved the ownership of minerals in non-producing land. Conceding, for sake of the discussion, that no practical method exists for valuing non-producing mineral interest for tax purposes, that reason does not necessarily apply to royalty interest in producing properties. There is ample evidence in this record to justify the conclusion that methods exist for determining, with sufficient degree of accuracy for tax purposes, the value of various royalty interests in producing oil wells. The chancellor did not pass upon that fact. He thought all evidence on that question was irrelevant, on the assumption the question was foreclosed by Gulf Refining Co. and Smith County Oil cases. The opinion in the Parker case also stressed the fact that in making the assessment the assessor had valued the entire property—the surface and the minerals—and had included the total value within the one assessment. In the case at bar there were two assessments—one of the

surface, another of the royalty interest, demonstrating that the assessor never intended to include in the surface assessment the value of the royalty interest.

Again, in the opinion overruling the suggestion of error in the Parker case it was said that the assessment of the surface, in order to convey the fee at a tax sale, should be "without any reservations or exceptions or limitations either in the particular assessment or elsewhere on the roll." Again, in that case, the court said, "Here the assessment was of the appropriate surface description without any reservation or qualification or limitation appearing anywhere on the assessment rolls." The opinion also stressed the duty of the owner to have his property assessed. Now, in the case at bar, Cummings either turned in the assessment of the surface and of the royalty interest, or he knew such separate assessments and valuations had been made, because he paid both assessments. He knew the valuation of the surface was not intended to include the value of the royalty interest. He had that knowledge from the rolls as well as actual knowledge of the fact. It cannot be said in this case the assessment of the surface was "without any reservations or exceptions or limitations either in the particular assessment or elsewhere on the roll." The royalty assessment was an exception, or reservation, to the assessment of the fee under the surface assessment, and that fact was shown by the rolls for each year. In these facts lie the vital distinction between the case at bar and the Stern-Parker case.

It would never do to say that an assessment of the surface necessarily covers the fee when the same roll shows that the minerals in place, or the royalty interest in producing properties, have been separately assessed. If so, thousands of under-surface owners, whose minerals have been separately assessed and paid upon, would lose their properties under sales of surface assessments. See McNatt v. Hyman, Miss. 38 So. (2d) 107.

Section 9770, Code of 1942, requires all the interests in real estate, including oil and gas rights, to be returned to the assessor for assessment, and such interests may be entered on the line or lines following that containing assessment of the surface, or upon a page or pages of the rolls following the assessment of the lands of the county, the value of such mineral interests to be included in the recapitulation of the roll. Therefore, no particular form is prescribed for assessing such interests.

That statute also provides that when oil, gas or mineral interests are owned separate and apart from the surface, "or when any person reserves any right or interest, or has any leasehold in the elements above enumerated . . . ," such interest may be assessed separately from the surface ownership.

Reversed and judgment here for appellant.

**Montgomery, J.**, took no part in this decision.