BRUMMETT v. CITY OF JACKSON.

Division B. Mar. 12, 1951.

No. 37865 (51 So. (2d) 52)

Forrest B. Jackson, for appellant.

E. W. Stennett and Gillespie, Neal & Williams, for appellee.

Roberds, P. J.

Appellant, in her declaration herein, averred that in May, 1949, the City of Jackson was, and for nine years

prior thereto had been, maintaining and operating an airport known as "Municipal Airport Hawkins Field"; that as part of such operation it offered and furnished to the public parking space and tie-down service for storage of airplanes using that field, for which it made a charge of $7.50 per month, and, in addition, reaped a profit from refueling the planes; that in May, 1949, she orally made such a contract for storage of her plane, paying the consideration therefor; that as a result the City owed her the duty to use reasonable care to properly tie-down and preserve the plane; that, in violation of that duty, it negligently fastened the plane by the use of rotten rope loosely tied, as a result of which negligence the plane was blown over and practically demolished. She asked for judgment for the damage.

Defendant, in its answer, while admitting it had been and was operating the airport, and was furnishing the storage service, and had made the contract with plaintiff, all as stated in the declaration, set up in bar of the action, first, that it had no power or authority to make such a contract; and, second, if it did have such power, that it was not liable for negligence because the City had relieved itself of liability by so declaring in an ordinance it had previously adopted and by a notice it had posted at the field.

These questions were heard by the trial judge upon the declaration and the answer, no proof being taken. He sustained the pleas and rendered judgment thereon for the City. Mrs. Brummett appeals.

We now pass upon the power of the municipality to make the contract. Chapter 63, Laws of Mississippi, 1928, empowers the municipalities of Mississippi, in their discretion, "to acquire by condemnation, donation, lease or purchase land to be used as an airport or landing place for airplanes. And they may erect such buildings thereon as they may deem necessary for such purpose, and equip and maintain such airport . . . and such airport may be situated beyond the limits of such municipality

. . .'', and they were authorized "to make and enforce such regulations and rules as they may deem necessary for the proper control of such airport, including the right to charge reasonable fees for the use thereof", with the further power to issue bonds for the foregoing purposes. Chapter 1, Title 28, Miss. Code 1942, brings forward and enlarges upon the foregoing powers, the principal additional powers being the right to contract with the United States Government, or others, in time of war, for the operation of the airports in the training of aviators, and the authority to adopt zoning regulations within an area of fifteen hundred feet beyond the limits of the field, as safety measures for planes landing upon and taking off from the field, with the further authority to "acquire by agreement, purchase or condemnation the right to place and maintain obstruction markers and/or lights upon any buildings, structures or obstructions, in such areas, including the right to lay and maintain conduits and wires to such obstructions markers and/or lights in such areas.''

Appellee contends that while, under the foregoing statutes, the City had the power to "maintain" an airport it did not have the authority to *operate* it, that the word "maintain" does not authorize the operation of the field. There are two answers to that contention. The first is that it would seem rather absurd for the Legislature to authorize the maintenance of the airport, that is, construction of buildings, runways, and all the equipment necessary to maintain the field and keep it ready for operation, yet vest no authority to operate it for income. Such a limited power would certainly be useless and a waste of the taxpayers' money.

The second answer is that the word maintain, in the connection in which it was used by the Legislature, includes the power to operate the field. The two words, maintain and operate, have been held to be synonymous as applied to operating an airport. Concordia Arrow Flying Service Corp. v. City of Concordia, 131 Kan. 247, 289 P.

955. Certainly the City has construed the statute as vesting in it power to operate the field, for it had been doing just that for nine years before the plane in question was damaged.

But it is urged the City had relieved itself of liability for negligence by adoption of an ordinance and posting at the field notice to that effect. The ordinance reads:

"(T) The airport manager will take due and responsible precautions to protect property in the airport but the City of Jackson, Mississippi, will not in any way be responsible or liable for accidents or injury to spectators, operating personnel or equipment from any cause whatsoever.

"(U) Unhoused aircraft to be parked in the space allotted to them and shall be properly secured by ropes and stakes or otherwise when left overnight or during weather conditions which indicate the necessity for it."

The notice posted at the airport reads "Not Responsible for Loss of property, theft or other causes."

Appellant says operation of this airfield was a private enterprise and the City was liable for negligence as any individual operator and it could not contract against its own negligence. ██ █ Such operation is a corporate and not a governmental function. Anno. 138 A. L. R. 126; City of Mobile v. Lartigue, 23 Ala. App. 479, 127 So. 257; City of Jackson v. McFadden, 181 Miss. 1, 177 So. 755. However, we need not decide whether it could contract against liability in the present case, for the reason that it is not shown any such contract was actually made. Nor did the ordinance or the notice constructively become a part of the contract. The ordinance was not a public statute, and the mere posting of notice on the premises "is not sufficient to constitute a contract for such limitation." 6 Am. Jur., Secs. 179 and 297. "In accordance with the foregoing principles the general rule supported by the modern authority appears to be that ██ the bailor, unless his attention is called to the fact that such conditions are intended as a part of the

contract, is not charged with notice, where he has no actual knowledge . . .". 6 Am. Jur., Secs. 178 and 296.

Appellee also set up as a defense to the action that the cause of the damage was a wind of great velocity, amounting to an act of God, against which it owed no duty to protect the plane from damage. That fact, and consequent liability are questions to be developed under evidence.

Reversed and remanded.