James L. ANDERSON, Jr., a Minor, by and through James H. Doss, Uncle and Next Friend, Plaintiff-Appellant,

v.

JACKSON MUNICIPAL AIRPORT AUTHORITY, Defendant-Appellee.

No. 78–2457.

United States Court of Appeals, Fifth Circuit.

May 20, 1981.

Roland C. Lewis, Jackson, Miss., for plaintiff-appellant.

Watkins & Eager, Thomas C. Gerity, Jackson, Miss., for defendant-appellee.

Before THORNBERRY, ANDERSON and THOMAS A. CLARK, Circuit Judges.

PER CURIAM:

This diversity appeal presents us with an opportunity for invoking the certification procedure authorized by rule of the Supreme Court of Mississippi.[1] Because this case raises important questions concerning the scope of sovereign immunity in Mississippi, we defer decision in the cause and certify our questions to that Court.

Following our usual practice, we requested the parties to submit a proposed statement of facts and proposed agreed certificate of the questions for decision. They have been unable to agree, within the time requested, upon either the facts or questions to be certified. Mindful of the costs of delay that attend this procedure, we have prepared our own certificate. The certificate is based on our examination of the record on appeal and the contentions of the parties.

---

1. Miss.Sup.Ct.R. 46 provides as follows:

When it appears to the Supreme Court of the United States, or to any circuit court of appeal of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the Supreme Court of this state, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Mississippi for rendition of a judgment or opinion concerning such questions or propositions of Mississippi law. This court may in its discretion, decline to answer the questions certified to it.

The evolution of certification practice and procedure in this circuit is ably outlined in Judge Brown's article, "Certification—Federalism in Action," 7 Cum.L.R. 455 (1977).

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF MISSISSIPPI, PURSUANT TO RULE 46, MISSISSIPPI SUPREME COURT RULES.

TO THE SUPREME COURT OF MISSISSIPPI AND THE HONORABLE JUSTICES THEREOF:

It appears to the United States Court of Appeals for the Fifth Circuit that the above-styled case in this Court involves questions or propositions of the law of the State of Mississippi that are determinative of the cause, and there appear to be no clear controlling precedents in the decisions of the Supreme Court of Mississippi. This Court hereby certifies the following questions of law to the Supreme Court of Mississippi for instructions concerning said questions of law, based on the facts recited herein, pursuant to Rule 46, Mississippi Supreme Court Rules, as follows:

## I. STYLE OF THE CASE

The style of the case in which this certificate is made is *James L. Anderson, Jr., by and through James H. Doss, Uncle and Next Friend*, Plaintiff-Appellant, *versus Jackson Municipal Airport Authority*, Defendant-Appellee, Case No. 78–2457, United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Southern District of Mississippi, Jackson Division.

## II. STATEMENT OF FACTS

Sometime in the first week of August, 1976, Jackson Municipal Airport Authority ("JMAA" or "the Authority") contracted with Southern Roofing and Metal Company, Inc., for the installation of roof drains in the terminal building of the Jackson Municipal Airport. Plaintiff Anderson, an Alabama resident, was an employee of Southern Roofing at the time. On August 9, 1976, while work was in progress, Anderson and a fellow employee were atop scaffolding that had been erected inside the terminal building when the plank on which they were standing broke. Both workers fell 18 feet to the floor below, and Anderson sustained the injuries for which he seeks to recover in this case.

Anderson alleges that the scaffolding was "supplied" to Southern Roofing for the use of its employees by JMAA and that the scaffolding was unsafe and defective. JMAA denies knowing who assembled the frame-and-platform scaffolding. However, JMAA admits that the scaffolding was its property, and that Southern Roofing's employees were using that scaffolding with the Authority's knowledge.

Prior to 1958 it appears to have been the rule in Mississippi that the operation and maintenance of an airport was a "corporate and not a governmental function," such that sovereign immunity would not bar an action against a city for it negligence in connection with the maintenance of an airport. *Brummett v. City of Jackson*, 211 Miss. 116, 51 So.2d 52, 53 (1951) (city could not relieve itself of liability for negligence by prior adoption of ordinance to that effect). In 1958, however, the Mississippi legislature enacted the Airport Authorities Law, 1958 Miss.Laws Ch. 230, Miss.Code Ann. § 61–3–1 *et seq.*, and the Municipal Airport Law, 1958 Miss.Laws Ch. 513, Miss. Code Ann. § 61–5–1 *et seq.* The latter Act regulates the direct operation of airports by the municipalities served, whereas the former Act, the Airport Authorities Law, regulates the operation of municipal airports by public authorities that may be created for that purpose. The City of Jackson is served by airports operated by the JMAA, which was created under the Airport Authorities Law.

The Municipal Airport Law contains a provision, in § 16, Miss.Code Ann. § 61–5–47, that purports to overrule the decision in *Brummett, supra*, at least insofar as the liability of a municipality is concerned.[2]

2. The second paragraph of § 61–5–47 reads as follows:

> No action or suit sounding in tort shall be brought or maintained against the state or any municipality thereof, or the officers,

There is no corresponding provision, nor is there any other express provision for tort immunity, in the Airport Authorities Law, under which the JMAA was organized.

The complaint was filed on August 23, 1977. On May 17, 1978, the trial court granted JMAA's motion for summary judgment on the ground that the Authority was immune from suit in tort under Mississippi law. This appeal followed.

Complicating matters somewhat, prior to the district court's decision, the Mississippi legislature enacted a law that expressly waives the immunity of an authority organized under the Airport Authorities Law in the circumstances of this case.[3] The amendment to the Airport Authorities Law now provides for immunity for "governmental" functions, "except that where the authority has liability insurance coverage as to any action brought against it, then such

action may be maintained against such authority . . . ."[4]

## III. QUESTIONS FOR THE SUPREME COURT OF MISSISSIPPI[5]

(1) Did the omission in the Airport Authorities Law of any provision for immunity in tort continue in effect the rule of law inferred from *Brummett, supra,* that an airport authority has no immunity from suit arising out of proprietary or corporate functions? If so, are allegations of supplying equipment for maintenance purposes sufficient to describe such functions?

(2) If the answers to the above questions are in the negative, of what effect on this case was the enactment of the amendment to § 61–3–15(b)? Specifically, does the amended § 61–3–15(b) authorize suits in tort for claims accruing prior to the amendment's enactment, subject only to statutes of limitations that are otherwise applicable?[6]

---

agents, servants, or employees of the state or any municipality thereof, on account of any act done in or about the construction, maintenance, enlargement, operation, superintendence or management of any airport or other air navigation facility.

3. The statute, 1978 Miss.Laws Ch. 396, § 3, was approved March 23, 1978, but its effective date was July 1, 1978. All parties, including the trial court, appear to have been unaware of the progress of this legislation.

4. The amendment in question adds the following sentences to § 7 of the Airport Authorities Law, Miss.Code Ann. § 61–3–15(b) (1980 Supp.):

Nothing contained herein shall be considered as a waiver of immunity in whole or in part as to any governmental function attempted or undertaken by the authority except that where the authority has liability insurance coverage as to any action brought against it, then such action may be maintained against such authority, but any recovery in such action shall be limited solely to the proceeds of any such liability insurance coverage and a judgment creditor shall have recourse only to the proceeds of such liability insurance coverage. Any judgment rendered in excess of the limits of such insurance, shall, on motion of the court, be reduced to the authority to the amount of said liability insurance coverage but not as to any joint tortfeasor, if any. . . .

This amendment does not expressly refer to an authority's immunity for proprietary or corpo-

rate functions, but presumably actions for negligence arising out of proprietary functions are within the terms of the exception, providing that "*any* action . . . *may be maintained*" so long as "the authority has liability insurance as to" that action (emphasis added).

5. We repeat what we have often said in the past:

[T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

*Martinez v. Rodriquez,* 394 F.2d 156, 159, n.6 (5th Cir. 1968).

6. We note that the district court reached its decision after enactment of the amendment but before its effective date. No savings provision appears, and we are uncertain whether the effective date operates as a savings clause. In any event, we direct the attention of the Supreme Court to the disposition of the second question reached in *State v. Cummings,* 206 Miss. 630, 40 So.2d 587, 589 (1949), holding that a consent to suit statute similar to that in this case authorized suit on claims arising before the effective date of the act. We also call attention to the decisions in *Stone v. McKay*

The entire record in this case, together with copies of the briefs of the parties, are transmitted herewith.[7]

CERTIFIED.

*Plumbing Co.*, 200 Miss. 792, 26 So.2d 349 (1946), *suggestion of error sustained* 200 Miss. 792, 30 So.2d 91 (1947), to the effect that intervening legislation might be given retroactive effect, if that would be consistent with the legislative purpose, so long as that would not divest a party of a "vested right."

7. Other questions are urged upon us by Appellant, but we do not understand them to raise unsettled issues of Mississippi law. Should the Supreme Court disagree with our analysis of these other questions, we invite that Court to call our attention to any controlling principles of state law derived therefrom.