**Eusebio M. MARTINEZ, father of Jacqueline M. Martinez, a minor, Deceased, Appellant,**

v.

**Jose RODRIQUEZ and Antonio Rodriquez, d/b/a Ingram Court Apartments, Appellees.**

No. 24319.

United States Court of Appeals Fifth Circuit.

May 2, 1968.

Rehearing Denied June 4, 1968.

Robert Orseck, Nichols, Gaither, Beckham, Colson, Spence & Hicks, and Podhurst & Orseck, Miami, Fla., for appellant.

Richard B. Adams, Jeanne Heyward, Dean, Adams, George & Wood, Miami, Fla., for appellees and cross-appellants.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and SIMPSON, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The main issue presented in this case is whether a father who sues under Florida Stat. 768.03, F.S.A. to recover damages for the death of his minor daughter is completely barred from recovery by the contributory negligence of the child's mother in which he did not, and could not participate, since the father was out of the country at the time of the accident and had never even seen his child.

Although there are other and peripheral problems on which we can

and do readily pass, this critical issue [1] is one which should be certified to the Supreme Court of Florida under Florida's remarkably helpful certification procedure.[2]

Before framing the certificate [3] we dispose finally of all other questions. Defendant asserts in a cross-appeal that the Trial Judge erred in allowing the introduction of certain regulations of Dade County for the sole purpose of showing contemporaneous practice of due care for the Miami area in maintaining swimming pools and in not properly instructing the jury on the interpretation of those regulations. The Court has considered these attacks, but we have decided that these errors, if indeed there were errors, caused no harmful or reversible damage to defendant. See F.R.Civ.P. 61. Thus after receipt of the answer to the certi-

1. This sharp, distinctive Florida legal issue now certified would have been forever shrouded in the impenetrable mystery of an enigmatic general verdict for the defendants. It proves once more that to litigants, to the appellate process, and to the development of the law, the F.R.Civ.P. 49(a) general charge with special verdict has great utility. See Weymouth v. Colorado Interstate Gas Co., 5 Cir., 1966, 367 F.2d 84, 93 n. 31, Earl Brown, Oil & Gas Leases § 6.09 (2d ed. 1967); John R. Brown, Federal Special Verdicts: The Doubt Eliminator, 1968, 44 F.R.D. 338.

2. Fla.Stat. § 25.031, F.S.A. (1959); Fla. App. Rules 4.61, 32 F.S.A.:

This Court has seen fresh evidence of its importance both in judicial administration and, more important, in correct determination of Florida law. This is summarized in W. S. Ranch Co. v. Kaiser Steel Corp., 10 Cir., 1968, 388 F.2d 257, 265, n. 15 (dissenting opinion) [No. 9295, Feb. 1, 1968]:

"See, e. g., Life Ins. Co. of Va. v. Shifflet, 5 Cir., 1966, 359 F.2d 501, upholding a jury verdict against the insurance company under the construction of the Florida Insurance Statutes on fraudulent misrepresentation. But then see, 5 Cir., 1967, 370 F.2d 555, granting a motion for rehearing and certifying the question to the Supreme Court of Florida, which in Life Ins. Co. of Va. v. Shifflet, Fla., 1967, 201 So.2d 715, reached a result opposite from the one reached in the original Fifth Circuit opinion. On receipt of the answer to the certified question, the Fifth Circuit vacated the earlier judgment and remanded the case to the district court. See 380 F.2d 375.

"And see especially Hopkins v. Lockheed Aircraft Corp., 5 Cir., 1966, 358 F.2d 347 in which the Court certified to the Supreme Court of Florida the controlling question of the dollar limitation on damages for wrongful death, a problem presenting fundamental and serious questions of state policy with only fragmentary case materials with which to work. The determination of the question was so difficult, not only for the Federal Court in the light of intervening developments in the law of conflicts but also for the Supreme Court of Florida, that it resulted actually in two opinions before the question was settled. See the opinion at 201 So.2d 743 holding that the situs state dollar limitation was contrary to Florida policy and the opinion at 201 So.2d 749 where, on rehearing, the Court reversed itself to validate the Illinois recovery limitation. * * *"

It has been often used. To those discussed above see: Clay v. Sun Ins. Office, Ltd., 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170, on certification upon remand, Fla., 1961, 133 So.2d 735, on receipt of answers to certification, 5 Cir., 1963, 319 F.2d 505, rev'd, 1964, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229; Green v. American Tobacco Co., 5 Cir., 1962, 304 F.2d 70, on rehearing, 304 F.2d 85, on certification, Fla., 1963, 154 So.2d 169, on receipt of answers to certification, 5 Cir., 1963, 325 F.2d 673, cert. denied, 1964, 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306, on appeal after retrial, 391 F.2d 97 [Jan. 24, 1968] [now pending rehearing en banc].

Whatever else might be said of *Green*, the failure of the procedure to give early decisive answers as in *Shifflet* and *Hopkins* may be due to the phrasing of the question certified (this possibility was avoided in Hopkins by n. 2, 358 F.2d at 349 and as we do here n. 6 infra).

3. Following our usual practice the parties were requested to, and did, submit an agreed proposed certificate. For clarification we have made some slight changes in form but not in substance. The certificate is deemed to include all of this opinion.

fied question, no other issue will be before the Court.

### CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO § 25.031, FLORIDA STATUTES 1959, AND RULE 4.61, FLORIDA APPELLATE RULES.

To the Supreme Court of Florida and the Honorable Justices thereof:

It appears to the United States Court of Appeals for the Fifth Circuit that the above-styled case in this Court involves a question or proposition of the law of the State of Florida which is determinative of the cause, and there appear to be no clear, controlling precedents in the decisions of the Supreme Court of Florida. This Court hereby certifies the following question of law to the Supreme Court of Florida for instructions concerning said question of law, based on the facts recited herein, pursuant to § 25.031, Florida Statutes 1959, F.S.A., and Rule 4:61, Florida Appellate Rules, as follows:

(1) Style of the Case

The style of the case in which this certificate is made is Eusebio M. Martinez, father of Jacqueline M. Martinez, a minor, deceased, appellant and cross-appellee versus Jose Rodriquez, and Antonio Rodriquez, d/b/a Ingram Court

Apartments, appellees and cross-appellants, case No. 24319, United States Court of Appeals for the Fifth Circuit, such case being an appeal from the United States District Court for the Southern District of Florida.

(2) Statement of Facts

On the morning of April 20, 1965, Jacqueline M. Martinez, the 22 month old daughter of appellant, drowned in the swimming pool of the apartment house where the child lived with her mother, Olga Martinez, who had come to the United States from Cuba in September 1962. At that time she was pregnant with Jacqueline. At the time of the drowning, Eusebio M. Martinez, the father, was still in Cuba and had never seen his child other than in photographs. He arrived in the United States subsequent to the child's death.

As the child's father he sued the owners and operators of the apartment house for the wrongful death of his daughter under Florida Statute 768.03, F.S.A.[4] The complaint sought damages for the plaintiff's loss of services during the child's minority, for the Plaintiff's mental pain and suffering, and pursuant to the unique provisions of § 768.03 for the mental pain and suffering of Mrs. Martinez. His complaint alleged that the defendants negligently maintained, staffed, equipped and guarded the pool located on their premises for the common use of the tenants, proximately causing the death of the child, a tenant business-invitee.

On the morning in question, Mrs. Martinez dressed Jacqueline in a swimming suit to swim as she had done before. Then Mrs. Martinez and Jacqueline

---

4. "(1) Whenever the death of any minor child shall be caused by the wrongful act, negligence, carelessness or default of any individual, or * * * of any private association or persons, or * * * of any officer, agent or employee of any private association of persons, acting in his capacity as such officer, agent, or employee, or * * * of any corporation, or * * * of any officer or agent, or employee of any corporation acting in his capacity as such officer, agent or employee, the father of such minor child, or if the father be not living, the mother may maintain an action against such individual, private association of persons, or corporation, and may recover, not only for the loss of services of such minor child, but in addition thereto, such sum for the mental pain and suffering of the parent (or both parents) if they survive, as the jury may assess.

"(2) The right of action as set forth in subsection (1) shall extend to and include actions ex contractu and ex delicto."

visited a neighbor in an apartment immediately adjacent to the pool. Mrs. Martinez left half open the rear door of the apartment which led to a passageway to the pool. The pool was unfenced and unattended. At the time of the drowning there were other children living on the premises. Mrs. Martinez spoke on the telephone and drank coffee in the apartment with several friends and Jacqueline, unwatched by her mother, wandered out of the apartment and drowned. There was no evidence that the father had knowledge, actual or constructive, that the mother would so conduct herself.

Defendants denied any negligence on their part and set up as a defense the contributory negligence of the mother in failing to maintain proper supervision of the deceased child. Plaintiff argues that even if the mother were contributorily negligent, it would not bar his recovery for he was out of the country at the time of the accident, and had in fact never seen his daughter since the mother had come to the United States in 1962 from Cuba while pregnant with Jacqueline.

The case was tried before a jury, and the jury by special verdict, F.R.Civ.P. 49(a),[5] found that defendants were negligent in their operation of the swimming pool and that Mrs. Martinez was negligent in her duty to supervise Jacqueline. Both of these findings are supported by the evidence and are binding under the Seventh Amendment. But plaintiff maintains that he is not completely barred by his wife's negligence since he neither (a) knew nor (b) should have known of his wife's conduct since he was out of the country at the time of the drowning. The Federal District Judge, citing Klepper v. Breslin, Fla., 1955, 83 So.2d 587, as the controlling authority held, however, that the recovery under Florida, Statute 768.03, F.S.A. was "indivisible" and that the negligence of the mother-wife would be imputed to plaintiff-father-husband, so the father was denied recovery. Plaintiff argues that the *Klepper* decision is not controlling as it held only that when the father knew or should have known of a mother's negligence in supervising a child would the recovery for his loss of services and his mental pain and suffering be barred completely.

Defendants do not contend, nor is there any such jury finding, that the father was negligent in any way. As stated above we sustain the findings of negligence on the part of the mother and defendants. The only problem remaining is whether the father is barred by the mother's negligence. If so, the case ends. If not, it must be remanded for a determination of plaintiff's damages.

(3) Question of Law to be Answered

Whether a father who sues under the Florida Statute 768.03, F.S.A. to recover damages for the death of his minor daughter is completely barred from recovery by the contributory negligence of the child's mother when the father neither knew nor should have known of the mother's negligent conduct in supervising the child.[6]

The entire record in this case, together with copies of the briefs of the parties in this Court, are transmitted herewith.

---

5. See note 1 supra.

6. To afford the widest possible latitude in reaching decision, we emphasize as we did in *Hopkins*, n. 2, 358 F.2d at 349 (see note 2 supra) that the particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.