BEATTY, Justice.
The United States Court of Appeals for the Fifth Circuit has requested this Court, under ARAP 18, to answer certain questions involving Alabama law deemed by that Court to be determinative of an action pending before it and on which there is no clear controlling precedent in the decisions of the Supreme Court of Alabama. The certification opinion follows:
CITIZENS AND SOUTHERN FACTORS, INC., Plaintiff-Appellant, v. The SMALL BUSINESS ADMINISTRATION, an Agency of the United States, et al., Defendants-Appellees.
No. 77-1628.
United States Court of Appeals, Fifth Circuit.
April 23, 1979.
Appeal from the United States District Court for the Northern District of Georgia; Albert J. Henderson, Jr., Chief Judge.
Before BROWN, Chief Judge, COLEMAN and TJOFLAT, Circuit Judges.
PER CURIAM:
The Court has determined that this case presents questions of Alabama law appropriate for resolution by the courts of that state.
Following our practice,[1] we requested that the parties submit a proposed statement of facts and proposed agreed certificate of the questions for decision, which they have done.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF ALABAMA PURSUANT TO ARTICLE 6, § 140(b)(3) OF THE ALABAMA STATE CONSTITUTION AS AMENDED 1973

TO THE SUPREME COURT OF ALABAMA AND THE HONORABLE JUSTICES THEREOF:
It appears to the United States Court of Appeals for the Fifth Circuit that this case involves questions or propositions of the law of the State of Alabama that are determinative of the cause, and there appear to be no clear controlling precedents in the decisions of the Supreme Court of Alabama. This Court certifies the following question of law to the Supreme Court of Alabama for instructions concerning said question of law, based on the facts recited herein, such case being an appeal from the United States District Court for the Northern District of Georgia.
I. Style Of The Case
The style of the case in which this certification is made is Citizens and Southern Factors, Inc. Plaintiff-Appellant v. The Small Business Administration, an agency of the United States, et al., Defendants-Appellees, No. 77 — 1628, United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Northern District of Georgia.
II. Statement Of Facts
On April 18, 1972, Vernon Carpet Mills, Inc., an Alabama corporation (“Vernon”), *253 entered into a factoring agreement with The Citizens and Southern National Bank (“Bank”). Pursuant to the factoring agreement, the Bank purchased all the accounts, instruments, contract rights, chattel paper, documents and general intangibles of Vernon and the proceeds thereof (“Receivables”).
Also, Paragraph 6 of the factoring agreement provided:
We [Vernon] further sell and assign to you all our title and/or interest in the goods (unless released by you) represented by receivables as well as goods returned by customers. You have the right to stop goods in transit or to replevy or to reclaim such goods for your protection. All returned, replevied, and reclaimed goods coming into our possession shall be held in trust by us for you.
On April 20, 1972, the Bank filed a Uniform Commercial Code financing statement with the office of the Secretary of State, Montgomery, Alabama, describing, in relevant part, the property as:
All present and future accounts, instruments, contract rights, chattel paper, documents and general intangibles, including those arising from the sale of raw materials, goods in process, and finished goods, together with the debtor’s rights in returned and reclaimed or repossessed goods.
The Bank subsequently assigned its right in and under the factoring agreement and all things collateral thereto to Citizens and Southern Factors, Inc. (“C&S”).
Approximately two years later, Vernon obtained an SBA guaranteed loan in the amount of $438,000 from the Bank of Wed-owee, Wedowee, Alabama, as evidenced by the execution of Note and Security Agreement in favor of the latter dated February 28, 1974. As collateral securing the loan, Vernon granted the Bank of Wedowee a security interest in its inventory and proceeds therefrom which is further reflected in a financing statement filed appropriately in the office of the Secretary of State of Alabama on March 11, 1974. The financing statement covered “all inventory now owned and hereafter acquired” as well as proceeds. On September 30,1975, the Bank of Wedowee assigned its interest in the security agreement to SBA.
Certain of the account debtors on the Receivables which had been purchased by C&S returned to Vernon the goods which they had purchased (“Returned Goods”). Vernon failed and each of C&S and the SBA claimed prior rights to the Returned Goods. Vernon was indebted to each of C&S and the SBA in amounts in excess of $5,000. By agreement of the parties, the Returned Goods were sold for $15,000 and such sum was paid into the registry of the United States District Court for the Northern District of Georgia.
C&S filed suit in the United States District Court for the Northern District of Georgia against the SBA for a declaratory judgment that it had the superior interest in the fund representing the Returned Goods. The District Court ruled that the SBA was entitled to priority to the fund, and C&S appealed that judgment to the United States Court of Appeals for the Fifth Circuit.
III. Issues Certified [2]
(1) Whether under the Uniform Commercial Code the conveyance of title to returned goods to an accounts receivable purchaser in a factoring agreement prevents the attachment of the security interest of an inventory financer in the returned goods or results in simply a retention of a security interest in the returned goods in favor of the accounts receivable purchaser.
*254 (2) If it is determined that the conveyance of title to returned goods results simply in a retention of a security interest in favor of the accounts receivable purchaser, whether § 9-306(5) or § 9-312(5) of the Uniform Commercial Code governs the priority in returned goods where the accounts receivable purchaser by contract has taken an express security interest in the returned goods and been the first to file with respect thereto.
The entire record in this case, together with copies of the briefs of the parties, the proposed questions of fact and law, and memoranda thereon, are transmitted herewith.
CERTIFIED.
Our answer to the first question must be that the arrangement under consideration resulted merely in the retention of a security interest in the returned goods in favor of the accounts receivable purchaser. Although plaintiff-appellant C&S, the assignee of the accounts purchaser, had previously argued in the federal courts that the conveyance of title to the returned goods operated to prevent the attachment of the subsequent security interest of the inventory financer, is now concedes in brief that the provisions of Article 9 of the Alabama UCC, Code of 1975, §§ 7-9-101 et seq., control in this situation.
We must therefore consider the second certified question. At issue is whether § 7-9-306(5) or § 7-9-312(5) of the Code of 1975 governs the priority of security interests in returned goods when the accounts purchaser expressly took a security interest in returned goods and was the first to file a financing statement with respect to goods of that nature. It is our opinion that § 7-9-312(5) is controlling.
Section 7-9-312(5) is the general rule that governs priority between secured creditors under Article 9, while § 7-9-306(5) is a special rule which was drafted to provide a means for determining priorities among secured creditors when collateral, after its sale, has been returned to, or repossessed by, the debtor. Section 7-9-306(5) provides:
(5) If a sale of goods results in an account or chattel paper which is transferred by the seller to a secured party, and if the goods are returned to or are repossessed by the seller or the secured party, the following rules determine priorities:
(a) If the goods were collateral at the time of sale for an indebtedness of the seller which is still unpaid, the original security interest attaches again to the goods and continues as a perfected security interest if it was perfected at the time when the goods were sold. If the security interest was originally perfected by a filing which is still effective, nothing further is required to continue the perfected status; in any other case, the secured party must take possession of the returned or repossessed goods or must file.
(b) An unpaid transferee of the chattel paper has a security interest in the goods against the transferor. Such security interest is prior to a security interest asserted under paragraph (a) to the extent that the transferee of the chattel paper was entitled to priority under section 7-9-308.
(c) An unpaid transferee of the account has a security interest in the goods against the transferor. Such security interest is subordinate to a security interest asserted under paragraph (a).
(d) A security interest of an unpaid transferee asserted under paragraph (b) or (c) must be perfected for protection against creditors of the transferor and purchasers of the returned or repossessed goods.
A surface level reading of this section could lead one to conclude that subsection 5(a) in conjunction with subsection 5(c) controls the situation at hand: that is, it could be argued that the inventory financer’s security interest in inventory follows the goods upon their return or repossession [see § 7-9-306(5)(a)] and defeats the security interest which the transferee of the *255 accounts took in the goods when they were returned [see § 7-9-306(5)(c)]. Such a construction of the provision, however, ignores the fact that the accounts receivable transferee in this case explicitly reserved a security interest in “returned goods,” both in the factoring agreement and in the financing statement, which was on file before SBA’s statement covering inventory and proceeds was filed. The language of § 7-9-306(5) does not contemplate such a situation. The section would apply if C&S had filed with respect to the accounts merely, but the accounts transferee is not, under these facts, forced to rely on § 7-9-306(5)(c) to give it a previously non-existent security interest in returned goods, for C&S had already expressly reserved a security interest in such returned goods. The inclusion of the reference to “returned goods” in C&S’s filed financing statement effectively rendered § 7-9-306(5) inoperative under the facts of this case. We must therefore look elsewhere in order to determine which security interest has priority.
Code of 1975, § 7-9-312(5) is the controlling provision. In pertinent part, it provides:
(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined as follows:
(a) In the order of filing if both are perfected by filing, regardless of which security interest attached first under section 7-9-204(1) and whether it attached before or after filing;
Under the undisputed facts, both security interests were perfected by filing; because the accounts purchaser filed first, its security interest prevails over the interest of the inventory financer under § 7-9-312(5).
Our holding is in accord with the principle of “first in time, first in right,” which underlies most priority provisions of Article 9. The application of § 7-9-312(5) in this case should also serve to further creditor confidence in the integrity of the filing system. If § 7-9-306(5) were deemed to govern in this situation, the incongruous result would be that an accounts receivable creditor — who had done everything possible under Article 9 to assure the priority of his interest in returned goods over secured creditors who filed later — would lose his rights in adequately described collateral simply because the subsequent creditor filed with respect to the collateral as it existed at an earlier point in the production process. See A Look at the Work of the Article 9 Review Committee, 26 Bus. Law. 307, 321— 23 (1970) (remarks of Professor Kripke). Such a result is clearly undesirable in that it could portend the demise of accounts receivable financing. See Kripke, Suggestions for Clarifying Article 9: Intangibles, Proceeds, and Priorities, 41 N.Y.U.L.Rev. 687, 716-19 (1966).
In accord with the foregoing discussion it is this Court’s conclusion that § 7-9-312(5) governs the priority in returned goods between these creditors.
QUESTIONS ANSWERED.
All the Justices concur.

. See In re McCIIntock, 5 Cir., 1977, 558 F.2d 732.

. We repeat what we have often said in the past:
[T]he particular phrasing used in the certified question is not to restrict the Supreme Court’s consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court’s restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.
Martinez v. Rodriguez, 5 Cir., 1968, 394 F.2d 156, 159, n. 6.