**LLOYDS OF LONDON, Acting By and Through D.J. WALKER, Principal Underwriter, Plaintiff-Appellee,**

**v.**

**Robert F. KELLY, R & B Helicopters, A Partnership, Donald Golder and Nancy M. Golder, Defendants-Appellants.**

**No. 83–8875.**

United States Court of Appeals, Eleventh Circuit.

April 19, 1985.

Charles L. Ruffin, Macon, Ga., for Donald Golder and Nancy M. Golder.

John C. Edwards, Macon, Ga., for plaintiff-appellee.

Before HENDERSON and HATCHETT, Circuit Judges, NICHOLS *, Senior Circuit Judge.

PER CURIAM:

This diversity action presents questions concerning the construction of O.C.G.A. §§ 33–24–9(a) and 2–7–103(a) (1982) and the interpretation of the Georgia Court of Appeals's decision in *Richmond v. Georgia Farm Bureau Mutual Insurance Co.*, 140 Ga.App. 215, 231 S.E.2d 245 (1976). These questions of state law appear to affect the outcome of this action and there are no controlling precedents in the appellate court decisions of the state. We therefore certify these questions to the Supreme Court of Georgia pursuant to Rule 37 of the Rules of the Supreme Court of the State of Georgia.

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO RULE 37 OF THE SUPREME COURT OF GEORGIA, TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES THEREOF.

(1) *Style of the Case*

The style of the case in which this certification is made is Lloyd's of London, acting by and through D.J. Walker, Principal Underwriter, plaintiff-appellee, versus Robert F. Kelly, R & B Helicopters, a partnership, Donald Golder, and Nancy M. Golder, defendants-appellants, Case No. 83–8875, United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Middle District of Georgia, Macon Division.

* Honorable Philip Nichols, Jr., U.S. Circuit Judge

(2) *Procedural History*

Donald A. and Nancy M. Golder filed a wrongful death suit against Robert F. Kelly, Ronnie J. Everidge, R & B Helicopters and other defendants not necessary to a disposition of this action in the Superior Court of Houston County, Georgia on June 23, 1982, seeking damages for the death of their son, Tyler, who was killed when he was struck by the blade of a helicopter operated by Kelly, doing business as R & B Helicopters. R & B Helicopters was the named insured on a policy of aircraft and aerial application insurance issued by Lloyd's of London (Lloyd's). Lloyd's commenced this declaratory judgment action against Kelly, Everidge, R & B Helicopters and the Golders on September 13, 1982, seeking a declaration that Kelly, Everidge and R & B Helicopters were not covered by the policy of insurance for their acts leading to the death of Tyler Golder and that Lloyd's was not obligated to provide a defense or pay any judgment which might be entered in the wrongful death action. The district court dismissed Everidge as a defendant on February 23, 1983, pursuant to the parties' joint motion for voluntary dismissal. At the court's suggestion, all the parties to the suit moved for summary judgment. On November 23, 1983, the court granted Lloyd's motion. This appeal followed.

(3) *Statement of the Facts*

Although many of the facts of this case are contested, the following facts are undisputed. R & B Helicopters, an aerial cropdusting service, was originally formed as a partnership between Kelly and Everidge in September or October, 1979. In the fall of 1980, they dissolved the partnership. Kelly continued to operate R & B Helicopters from a metal hanger on property rented from John and Juanita Stowe, the parents of John S. Stowe, II, who was also struck and killed by the blades of the helicopter.

Tyler Golder commenced working for Kelly around the end of May or the first of

for the Federal Circuit, sitting by designation.

June, 1981. Kelly and Tyler lived about one block apart in Perry, Georgia, approximately fifteen to twenty miles from R & B Helicopter's principal place of business in Montezuma, Georgia. Tyler rode to and from work with Kelly, but it is disputed whether this was part of his employment or was merely a matter of convenience. The length of the work day varied, but Tyler was paid thirty dollars per day regardless of the hours worked so long as there was some cropdusting business on that particular day. The parties agree that Tyler's duties included mixing chemical pesticides; loading the chemicals into the helicopter tanks; driving and operating a water wagon, a water tank on a trailer pulled by a pickup truck; connecting and disconnecting the trailer which was used to transport the helicopter from the pickup truck utilized to tow the trailer; fastening and unfastening the straps holding the skids of the helicopter to the landing pad on top of the trailer; and flushing out the helicopter tanks after completion of the spraying operation.

Sometime between 7:00 and 7:30 p.m. on June 25, 1981, after Kelly and Tyler had finished their scheduled work for the day and returned to the helicopter pad, Kelly was approached by John S. Stowe, II. Stowe asked Kelly to spray his garden located on land adjacent to that rented by Kelly. Kelly and Stowe were friends who often returned favors for each other. Kelly reluctantly agreed to comply with the request because Stowe had already mixed up the chemicals.

The details of the events occurring between the time Kelly and Tyler Golder returned to the pad and the time of the accident are in controversy. As stated by the district court:

It is disputed whether or not Tyler Golder helped flush out the tanks or otherwise assisted Mr. Kelly in preparing to spray John Stowe's garden and, if he did, when he did so. Although there is no dispute that Tyler Golder went to the store to get soft drinks for he and Mr. Kelly, there is a dispute as to whether getting soft drinks was a routine part of Tyler Golder's work day and was expected of him or whether it was a totally voluntary gesture on his part. Tyler Golder and John Stowe both gave a thumbs-up signal at the time of the attempted take off; however, it is disputed whether giving that signal was one of Tyler Golder's employment duties. There is yet another dispute as to whether Tyler Golder was expected to and would have assisted Mr. Kelly flush out the helicopter tanks and put up the helicopter after the spraying.

Record, Vol. 2, at 410. According to Kelly, John Stowe helped him unfasten the straps holding the helicopter to the trailer. It is not clear whether one of the straps remained fastened or malfunctioned, but when Kelly attempted to lift off, the helicopter tilted off the trailer. The blades struck Tyler Golder and John Stowe, both of whom had been standing to the side of the helicopter pad giving Kelly a "thumbs-up" signal.

On June 23, 1982, the Golders brought an action in the Superior Court of Houston County seeking money damages for the death of their son. Lloyd's subsequently informed Kelly, Everidge and R & B Helicopters that, although it would provide legal representation for the lawsuit, it was reserving its rights to deny coverage pursuant to exclusions in the policy and intended to file a declaratory judgment action seeking a determination that the exclusions precluded coverage for the death of Tyler Golder. Attorneys retained by Lloyd's filed defensive pleadings on behalf of Kelly, Everidge and R & B Helicopters on August 31, 1982.

Lloyd's instituted this declaratory judgment action against Kelly, Everidge, R & B Helicopters and the Golders on September 13, 1982. Jurisdiction was based on diversity of citizenship. Lloyd's contention that the policy of insurance issued to R & B Helicopters did not cover the defendants was based primarily on exclusion 7 which provides that the policy does not apply

to any obligation for which the insured or his insurer may be held liable under any Workmen's Compensation, Unemployment Compensation or Disability Benefits law or under any similar law; or to bodily injury of any employee of the Insured arising out of and in the course of his employment by the Insured or his sub-contractor[.]

We are here concerned with three contentions raised by the appellants in the district court and now asserted on appeal. First, they urge that the failure of Lloyd's to file a copy of the insurance policy issued to R & B Helicopters with the Insurance Commissioner of the State of Georgia in compliance with O.C.G.A. § 33–24–9(a) precludes equitable relief, i.e., a declaratory judgment, because Lloyd's acted with "unclean hands." They also maintain that the failure to file a copy of the policy voids the exclusionary provision and renders it unenforceable. Lloyd's, on the other hand, claims that the policy form is excepted from the filing requirement because, in the language of the statute, it is "of unique character designed for and used with relation to insurance upon a particular subject." In addition, Lloyd's argues that it cannot be guilty of unclean hands because if it had inquired of the Insurance Commissioner's office, it would have been told that it did not have to file the form. *See* Affidavits of Ralph W. Terry, Vol. 2, at 394–95. Second, the appellants assert that Lloyd's failed to file its declaratory judgment action in as timely a fashion as required by *Richmond v. Georgia Farm Bureau Mutual Insurance Co.*, 140 Ga.App. 215, 231 S.E.2d 245 (1976). They contend that the immediacy of the filing of the declaratory judgment action is to be measured from the time when Lloyd's requested an extension of time to file its answer in the state court wrongful death action while Lloyd's maintains that the important commencement point is the time it actually filed its answer. If the appellants' position is adopted, two months elapsed; if Lloyd's contention is correct, only two weeks intervened. Finally, the appellants contend that the exclusionary provision is void and unenforceable

because it does not comply with O.C.G.A. § 2–7–103(a). They allege that § 2–7–103(a) requires the issuance of an insurance policy to a party seeking a pesticide contractor's license which protects "persons who may suffer legal damages as a result of the operation of the applicant." The appellants insist that this statutory requirement prevails over the exclusionary provision, thereby estopping Lloyd's from denying coverage. Lloyd's interprets the statute as simply setting forth the requirements for obtaining a pesticide contractor's license. It maintains that the statute does not establish standard provisions that must be included in aviation policies. The district court rejected all of the appellants' contentions.

*Questions to be Certified*

1–(a) Whether the policy form used by Lloyd's to issue a policy of aircraft and aerial application insurance to R & B Helicopters is excepted from the filing requirement of O.C.G.A. § 33–24–9(a)?

(b) If not, does Lloyd's failure to file the form in accordance with the statute preclude equitable relief because of the "unclean hands" doctrine or void the exclusionary provision thereby making it unenforceable.

2–Whether Lloyd's filed its declaratory judgment action in the timely manner required by *Richmond v. Georgia Farm Bureau Mutual Insurance Co.*, 140 Ga.App. 215, 231 S.E.2d 245 (1976)?

3–Whether O.C.G.A. § 2–7–103(a) requires coverage for aviation insurance policies issued to pesticide contractors to include protection for "persons who may suffer legal damages as a result of the operation of the applicant" with the result that the exclusion relied on by Lloyd's is void and unenforceable because in conflict with that requirement or does it simply set out the requirements for obtaining a pesticide contractor's license?

The phrasing of the certified questions does not restrict the Supreme Court's consideration of the issues as it perceives them in its analysis of the record certified in this

case. This latitude extends to the restatement of the issues and the manner in which the answers are to be given. *See Republic National Life Insurance Co. v. Taylor,* 752 F.2d 523 (11th Cir.1985) (citing *Martinez v. Rodriguez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968)).

The clerk of this court is directed to transmit the certificate, as well as the briefs and record filed with the court, to the Supreme Court of Georgia and simultaneously to transmit copies of the certificate to the attorneys for the parties.