Ross J. WOOD, Plaintiff-Appellant,

v.

NEW YORK LIFE INSURANCE COMPANY, Defendant-Appellee.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Plaintiff-Appellee,

v.

Ross J. WOOD, Defendant-Appellant.

DELAWARE AMERICAN INTERNATIONAL LIFE INSURANCE COMPANY, Plaintiff-Appellee,

v.

Ross J. WOOD, Defendant-Appellant.

Nos. 84–8136, 84–8184 and 84–8185.

United States Court of Appeals, Eleventh Circuit.

April 25, 1985.

Richard P. Decker, Atlanta, Ga., for appellant in all cases.

Robert A. Moss, Atlanta, Ga., for appellant in No. 84–8136.

H. Sanders Carter, Jr., Atlanta, Ga., for appellees in Nos. 84–8136 and 84–8184.

Douglas N. Campbell, Atlanta, Ga., for appellee in No. 84–8185.

Before VANCE and ANDERSON, Circuit Judges, and PITTMAN *, District Judge.

PER CURIAM:
CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO ARTICLE VI, SEC-

designation.

TION VI, PARAGRAPH IV OF THE GEORGIA CONSTITUTION

TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES THEREOF:

It appears to the United States Court of Appeals for the Eleventh Circuit that the above matters involve questions or propositions of the law of the State of Georgia which may be determinative of the cases, and there are no clear controlling precedents in the decisions of the Supreme Court of Georgia. The United States Court of Appeals for the Eleventh Circuit therefore certifies the following questions of law of the State of Georgia to the Supreme Court of Georgia for instructions concerning such questions of law, based upon the facts recited herein and in the record which accompanies this certification.

I. *Style of Cases*

The styles of the cases in which this certificate is made are as follows: Ross J. Wood, Plaintiff-Appellant, versus New York Life Insurance Company, Defendant-Appellee, Case No. 84–8136, filed in the United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Northern District of Georgia; Connecticut General Life Insurance Company, Plaintiff-Appellee, versus Ross J. Wood, Defendant-Appellant, Case No. 84–8184, filed in the United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Northern District of Georgia; and Delaware American International Life Insurance Company, Plaintiff-Appellee, versus Ross J. Wood, Defendant-Appellant, Case No. 84–8185, filed in the United States Court of Appeals for the Eleventh Circuit, on appeal from the Unit-

ed States District Court for the Northern District of Georgia.

II. *Statement of Facts*

On January 13, 1982, Kristofer Wood died at the age of twenty-two of respiratory failure resulting from his lifelong affliction with muscular dystrophy. Kristofer was first diagnosed as having muscular dystrophy around 1966 when he was six years old. In 1969 his father, Ross Wood, began taking out insurance on Kristofer's life augmenting the coverage with increasing frequency during the five years immediately preceding Kristofer's death. At Kristofer's death, his father had accumulated policies from fifteen different insurance companies insuring Kristofer's life in excess of $500,000.00. All the policy applications contained specific questions regarding long-term illnesses and treatment, however, Ross Wood never disclosed that Kristofer suffered from muscular dystrophy. These three cases arose after Ross Wood attempted to recover on the policies issued by New York Life, Connecticut General Life and Delaware American International Life.[1] In all three cases, following cross-motions for summary judgment, the district court granted summary judgment in favor of the insurance companies.

The three cases differ somewhat factually, however, they share many common elements and their resolutions are dependent upon the two questions certified below. In all three cases Ross Wood signed Kristofer's name to the various applications for insurance. He asserts that he did so with Kristofer's consent, an assertion accepted as fact for summary judgment purposes. Section 33–24–6(a) of the Georgia Code Annotated requires that an insured either sign the application for insurance or consent in writing to its issuance.[2] The insurance

1. New York Life had two policies outstanding on Kristofer's life at the time of his death. One had been issued to Kristofer as a member of the American Academy of Political and Social Science and the other had been issued to him as a member of the Operations Research Society of America.

2. The statute specifically provides that:

No life or accident and sickness insurance contract upon an individual, except a contract of group life insurance or of group or blanket accident and sickness insurance, shall be made or effectuated unless at the time of the making of the contract the individual insured, being of competent legal capacity to contract, applies for a life or accident and sickness

companies assert that since Kristofer did not sign the applications or consent to them in writing, they are void *ab initio*.

Ross Wood contends that § 33–24–6(a) is not applicable in these cases because the policies involved are "contract[s] of group life insurance" and thus excepted from the statute's requirements. Wood argues that several items in the record support this contention. First, the certificates of insurance issued by New York Life and Connecticut General state unequivocally on their faces that they are group policies. Second, an undated letter from the Administrator of the Connecticut General Group Life Plan notified Kristofer that he could increase his group coverage by signing and returning the letter to Connecticut General. Last, Wood points out that in her deposition Ms. Palma Cronk, who is a consultant for New York Life, responded affirmatively to the following question—"I take it then that it was a group insurance program as opposed to some other kind of insurance?"

The insurance companies acknowledge the foregoing, however, they contend that the policies involved here are not the type of "true group" policies which are intended to be excepted from the provisions of § 33–24–6(a). To support their contention they point out that the purpose of the requirement that an insured sign the application or consent in writing to its issuance is to protect the insured. The rule is designed to keep an individual from unknowingly becoming worth more dead than alive to a potential beneficiary. Group policies are excepted under § 33–24–6(a) because under a "true group" policy the party who takes out the insurance cannot be the beneficiary. *See* Ga.Code Ann. § 33–27–1 (Supp.1984). The insurance companies argue that since the party taking out the insurance here, Ross Wood, could have been and was in fact the named beneficiary, the group policy exception should not be applicable. They assert that any other interpretation prevents the statute from accomplishing its goal—protection of the insured. After examining the certificates in question and analyzing the applicable Georgia law, the district court agreed with the insurance companies and concluded that the policies were "franchise" rather than "true group" policies and therefore held that § 33–24–6(a) was applicable. Since Kristofer had not signed the applications or consented to their issuance in writing, the court held that all the contracts were void *ab initio*.

Wood further contends that even if § 33–24–6(a) does apply to the policies, the insurance companies are barred from raising the defense that Kristofer failed to sign the applications or consent to their issuance in writing because each of the policies contained an incontestability clause, as mandated by Ga.Code Ann. § 33–27–3(a)(2),[3] which imposed a two year time limit for raising policy-validity defenses. All three of the insurance companies issued their initial policies on Kristofer's life more than two years prior to his death. New York Life issued its initial policies on October 1, 1978, and March 3, 1979, Connecticut General issued its initial policy on November 1, 1978, and Delaware American issued its initial policy on July 1, 1979. The coverage

---

insurance contract or consents in writing to the contract, ....

Ga.Code Ann. § 33–24–6(a) (1982).

**3.** Section 33–27–3(a)(2) provides that
  (a) No policy of group insurance shall be delivered in this state unless it contains in substance the following provisions or provisions which in the opinion of the Commissioner are move favorable to the persons insured or at least as favorable to the persons insured and more favorable to the policyholder:
  (1) ....
  (2) A provision that the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue and that no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance, with respect to which the statement was made, after the insurance has been in force prior to the contest for a period of two years during such person's lifetime nor unless it is contained in a written instrument signed by him;
  ....

Ga.Code Ann. § 33–27–3(a)(2) (Supp.1984).

under each of the policies was raised and new certificates of insurance were issued at least once within the two years immediately preceding Kristofer's death. New York Life raised its coverage and issued new certificates for the final time on March 25, 1981 and April 28, 1981. Connecticut General raised its coverage and issued a new certificate for the final time on February 23, 1981.[4] Delaware American raised its coverage and issued its final certificate of insurance on September 1, 1981. Wood contends that since the initial policies were all issued more than two years prior to Kristofer's death, the insurance companies are now barred by the incontestability clauses from raising the void *ab initio* defense. The insurance companies contend that the incontestability clauses are inapplicable since the policies were void *ab initio* and thus never in effect. In the alternative, they contend that the effective date of each certificate of insurance is its date of issuance and that since all the final certificates were issued within two years of Kristofer's death, the incontestability clauses do not bar their present claims. The district court again agreed with the insurance companies and concluded that the incontestability clauses were not applicable since the contracts were void *ab initio*.

III. *Questions to be Certified to the Georgia Supreme Court*

1.

Whether the policies issued by New York Life Insurance Company, Connecticut General Life Insurance Company and Delaware American International Life Insurance Company on the life of Kristofer L. Wood are "contract[s] of group life insurance" within the meaning of Ga.Code Ann. § 33–24–6(a) and thus excepted from the requirement that the insured either sign the application for insurance or consent in writing to its issuance?

2.

Whether the two year time limit imposed by the policies' incontestability clauses in compliance with Ga.Code Ann. § 33–27–3(a)(2) bars the insurance companies from now raising the defense that Kristofer neither signed the applications for insurance nor consented in writing to their issuance?

Our statement of these questions is not designed to limit the inquiry of the Supreme Court of Georgia.

[T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

*Martinez v. Rodriquez*, 394 F.2d 156, 159 n. 6 (5th Cir.1968).

The entire record in the case is transmitted herewith for any assistance it might provide to the Court in answering the certified questions. Pending the Georgia Supreme Court's answers to the foregoing certified questions, all further proceedings in this appeal are STAYED.

CERTIFIED.

---

**4.** Connecticut General raised its coverage once subsequent to February 23, 1981, however, it did not issue a new certificate of insurance after that date.