**GRANITE STATE INSURANCE
COMPANY, Plaintiff–
Appellant,**

v.

**NORD BITUMI U.S., INC., Macon–Bibb
County Industrial Authority, St. Paul
Surplus Lines Insurance Company, De-
fendants–Appellees.**

No. 90–9160.

United States Court of Appeals,
Eleventh Circuit.

April 30, 1992.

Jon B. McPhail, Mark D. Thigpen,
McKenzie and McPhail, Atlanta, Ga., for
plaintiff-appellant.

Hubert C. Lovein, Jr., John Thomas
Mitchell, Jr., Jones Cork and Miller, Macon,
Ga., for defendant-appellee Macon–Bibb
County Indus. Authority and St. Paul Sur-
plus Lines Ins. Co.

James Joseph Brissette, Hurt, Richard-
son, Garner, Todd & Cadenhead, Atlanta,
Ga., for defendant-appellee Nord Bitumi
U.S., Inc.

Before COX and DUBINA, Circuit
Judges, and GODBOLD, Senior Circuit
Judge.

PER CURIAM:

This appeal presents significant issues of
Georgia law concerning the effect an in-
sured's settlement of his excess liability
has on his insurer's liability under a con-
tract of insurance and whether an insured's
tardy forwarding of suit papers may be
cured by the plaintiff's dismissal and refil-
ing of an identical lawsuit. These issues
involve questions of the interpretation of
insurance contract provisions that are dis-
positive in this case but unanswered by
controlling precedent in the decisions of
Georgia courts. Because these issues im-
plicate substantial questions of public poli-
cy, we defer our decision in this case pend-
ing certification of these questions to the
Supreme Court of Georgia pursuant to GA.
CONST. art. VI, § 6, para. 4, O.C.G.A.
§ 15–2–9, and Rule 37 of the Supreme
Court of Georgia. *See Polston v. Boom-
ershine Pontiac–GMC Truck, Inc., Boom-
ershine Chevrolet, Inc., Boomershine
Automobile Co., and General Motors
Corp.,* 952 F.2d 1304 (11th Cir.1992).

We submit the following for consideration by the Supreme Court of Georgia:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO ARTICLE VI SECTION VI PARAGRAPH IV OF THE GEORGIA CONSTITUTION.

TO THE SUPREME COURT OF GEORGIA AND THE HONORABLE JUSTICES THEREOF:

## I. *Style of the Case*

The style of the case is as follows: Granite State Insurance Company, Plaintiff–Appellant, versus Nord Bitumi U.S., Macon–Bibb County Industrial Authority, St. Paul Surplus Lines Insurance Company, Defendants–Appellees, Case No. 90–9160, filed in the United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Middle District of Georgia.

## II. *Facts and Procedural History*

In October 1984, fire damaged a building owned by Macon–Bibb County Industrial Authority (the Authority) and leased by Nord Bitumi, U.S., Incorporated (Nord Bitumi).

At the time of the fire, St. Paul Surplus Lines Insurance Company (St. Paul) insured the Authority against loss to the building by fire. Granite State Insurance Company (Granite State) insured Nord Bitumi against loss to its personal property and leasehold improvements. Granite State was also Nord Bitumi's liability insurer, providing certain property damage liability insurance.

The Authority's position was that one of Nord Bitumi's employees negligently caused the fire. The damage to the building totaled $109,955.00. In April 1985, St. Paul paid the Authority $104,955.00, representing payment for the damage to the building less a $5,000.00 deductible. Thereafter, St. Paul made demand upon Nord Bitumi and Granite State, as its liability insurer, for payment of $109,955.00, asserting that Nord Bitumi's negligence caused the fire. Simultaneously, St. Paul wrote the attorneys for Nord Bitumi and the adjuster handling the matter for Granite State offering to settle the claim for 75% of the loss or $82,466.23. Granite State's adjuster responded some months later, rejecting the settlement offer on the ground that Nord Bitumi had no responsibility for the loss under the terms of the lease.

Granite State's position at this time was that the liability insurance it offered Nord Bitumi was limited to $50,000.00. Nord Bitumi, expressing concern about its potential uninsured exposure, entered into settlement negotiations with St. Paul. Granite State alleges in its complaint that it was not informed of these negotiations and there is nothing in the record to indicate otherwise.

In September 1987, the Authority, Nord Bitumi, and St. Paul entered into a "Covenant" under which Nord Bitumi paid the Authority and St. Paul $33,716.25. (Included in this amount was $5,000.00 Nord Bitumi paid to the Authority in order to reimburse the Authority for its deductible loss). In consideration of Nord Bitumi's payment, the parties agreed that St. Paul would commence and prosecute a claim, either in St. Paul's name or in the name of the Authority, against Nord Bitumi for the full amount of the loss caused by the fire. The Covenant further provided that the Authority and St. Paul, in consideration of Nord Bitumi's payment, would look solely to Nord Bitumi's liability insurance carrier, Granite State, to pay the claim and that the Authority and St. Paul would not cause or permit a resulting judgment to be collected from the assets of Nord Bitumi.

In June 1988, the Authority filed suit against Nord Bitumi in Bibb County Superior Court seeking $109,955.00 in damages. On August 2, 1988, 46 days after receiving those suit papers, Nord Bitumi forwarded them to Granite State.

After learning of Nord Bitumi's delay in forwarding the suit papers, Granite State advised Nord Bitumi that there had been a material breach of the insurance contract (which required Nord Bitumi to "immediately" forward suit papers) and that it had

no duty to defend or indemnify Nord Bitumi. Granite State filed an answer on behalf of Nord Bitumi in September 1988, but contemporaneously filed this declaratory judgment action in the Northern District of Georgia seeking a declaration regarding its duty to defend Nord Bitumi in the Bibb County suit.

On January 25, 1989, the Authority voluntarily dismissed its lawsuit against Nord Bitumi. An identical suit was refiled in Bibb County Superior Court on February 13, 1989. Nord Bitumi immediately forwarded these suit papers to Granite State. Granite State maintained that it had no obligation to defend Nord Bitumi in this second suit, gave Nord Bitumi notice of its reservation of rights, and filed an answer which denied the material allegations of the complaint. Granite State also filed a motion to stay the Authority's lawsuit and a. motion for protective order on behalf of Nord Bitumi. Nord Bitumi removed the second lawsuit to the Middle District of Georgia and filed a motion to transfer the pending declaratory judgment action from the Northern District to the Middle District.

The Middle District of Georgia granted Granite State's motion to stay and motion for protective order in the suit filed by the Authority. Nord Bitumi's motion to transfer the declaratory judgment action to the Middle District of Georgia was granted.

In June 1989, Granite State filed a motion for summary judgment. Granite State asserted that it was entitled to summary judgment because Nord Bitumi had breached the insurance contract by failing to "immediately" forward the suit papers in the first suit and that the dismissal and refiling of the action did not cure this breach. Granite State also argued that Nord Bitumi's settlement under the Covenant breached the Granite State insurance contract and adversely affected Granite State's ability to defend or settle the underlying action. Finally, Granite State asserted that the insurance contract did not cover the loss to the Authority's building and that even if the loss was covered, the applicable liability limit was $50,000.00 instead of the $500,-000.00 limit claimed by Nord Bitumi, the Authority and St. Paul. The Authority, St. Paul and Nord Bitumi filed cross-motions for summary judgment. The district court denied Granite State's motion and granted the other parties summary judgment on all issues. Granite State appeals.

### III. *The Parties' Contentions with Regard to the Questions to be Certified*

The issues certified in this case involve the proper interpretation, under Georgia law, of the cooperation clause and the forwarding of suit papers clause of the Granite State insurance contract.

The answer to the issue relative to the limits of liability involves the application of well-settled principles of Georgia law to the facts of this case; thus, we find it to be inappropriate for certification. Depending on the answers to the certified questions, resolution of this issue may become unnecessary. Therefore, we will defer our decision on the limits of liability issue pending certification of this case to the Supreme Court of Georgia.

### A. The Covenant

Granite State contends Nord Bitumi's entering the Covenant breached the "cooperation" and "no action" clauses of the contract of insurance. These provisions provide as follows:

**3. Insured's Duties in the Event of Occurrence, Claim or Suit**

    \*    \*    \*    \*    \*    \*

(c) The **insured** shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **insured** because of injury or damage with respect to which insurance is afforded under this policy; and the **insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The **insured** shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

**4. Action Against Company** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **insured's** obligation to pay shall have been finally determined either by judgment against the **insured** after actual trial or by written agreement of the **insured,** the claimant and the company.

Granite State argues that these provisions provide the insurer with the right to control the litigation without the insured pre-settling the suit. It contends that Nord Bitumi's entering into the Covenant was a breach of the contract because it was intended to focus the plaintiffs' resources against Granite State and because Granite State was not notified before the Covenant was entered into. For these reasons, Granite State argues that it has no duty to defend Nord Bitumi or pay any resulting judgment.

Nord Bitumi contends that it entered into the Covenant only after Granite State wrongfully denied coverage and that once this occurred it was free to settle the claim without violating the cooperation clause. Further, Nord Bitumi, St. Paul and the Authority assert that the Covenant was only a settlement of Nord Bitumi's excess liability above what Granite State insisted was the limit of its liability; thus, the settlement payment was made at Nord Bitumi's own expense and Nord Bitumi was free to settle without notice to, or the consent of, Granite State.

The district court granted the motions for summary judgment of Nord Bitumi, St. Paul and the Authority, finding that the settlement payment was made at Nord Bitumi's own expense, that Granite State was in no way obligated to pay the amount agreed to by Nord Bitumi, and that the Covenant did not prejudice Granite State. Granite State argues that this holding was in error.

**B. The Forwarding of Suit Papers**

The contract of insurance between Granite State and Nord Bitumi states in relevant part that:

> [I]f claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

Nord Bitumi was served with suit papers in June 1988 but failed to forward these papers to Granite State until 46 days later. Granite State advised Nord Bitumi that this delay was a breach of the insurance contract, thus relieving Granite State of any liability under the policy.

Subsequently, the Authority dismissed this first action and two weeks later refiled a second action. Nord Bitumi immediately forwarded these suit papers to Granite State.

Granite State contends that the insurance contract was breached by the tardy forwarding of the suit papers in the first suit and that it was prejudiced by the delay because it was unable to remove the first action to federal court. Granite State further argues that the Authority's dismissal and refiling of the action under O.C.G.A. § 9–2–61(a), the Georgia renewal statute, did not cure this breach and that it is therefore relieved of all liability under the contract.

Nord Bitumi, the Authority and St. Paul argue that Nord Bitumi's failure to "immediately" forward suit papers in the first suit is irrelevant because the first suit was dismissed and a new suit was filed in which Nord Bitumi complied with the contract by immediately forwarding the suit papers. Nord Bitumi argues that under O.C.G.A. § 9–2–61(a), the renewed case is an entirely new and separate suit and the fact that the forwarding of suit papers was tardy in the first suit has no bearing on the second suit.

The district court found that under O.C.G.A. § 9–2–61(a), the dismissed and refiled lawsuit was *de novo* or entirely new. It was undisputed that Nord Bitumi had immediately forwarded the suit papers served in the second suit. The district court held, therefore, that the late forward-

ing of suit papers in the first suit was irrelevant and that the motions for summary judgment of St. Paul, the Authority and Nord Bitumi were due to be granted. Granite State asserts that this was error.

Because these issues involve questions of substantial public policy not yet addressed by the Georgia courts, we certify the following questions to the Supreme Court of Georgia.

IV. *Questions to be Certified*

(1) Whether the cooperation clause contained in the comprehensive general liability policy precludes the insured from settling his excess liability without notice to or the consent of the insurer.

(2) Whether the insured's tardy forwarding of suit papers is cured by the plaintiff's voluntary dismissal and refiling of an identical lawsuit; or, can the insurer rely on the tardy forwarding in the first suit to avoid liability even though the insured immediately forwarded the papers served in the second suit.

Our statement of the questions to be certified is not meant to limit the scope of inquiry by the Supreme Court of Georgia.

[T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

*Martinez v. Rodriquez*, 394 F.2d 156, 159 n. 6 (1968).

The entire record in this case, together with copies of the briefs of the parties, is transmitted herewith.

QUESTIONS CERTIFIED.